United States District Court
Western District of Texas
Waco Division

| | |
|---|---|
| Affinity Labs of Texas, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Amazon.com, Inc.; <br> Amazon Digital Services, Inc., <br><br> Defendants. | Case No. 15-29 <br><br> **Jury Trial Demanded** |

## Complaint for Patent Infringement

Plaintiff Affinity Labs of Texas, LLC (Affinity Labs) files this Complaint against Defendants, Amazon.com, Inc. and Amazon Digital Services, Inc. (collectively, Amazon) and alleges as follows:

### Parties

1. Plaintiff Affinity Labs is a Texas limited liability company having offices at 31884 RR 12, Dripping Springs, TX 78620.

2. Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com, Inc. is actively engaged in business within the State of Texas.

3. Defendant Amazon Digital Services, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington, and is a wholly owned subsidiary of Amazon.com, Inc. Amazon Digital Services, Inc. is registered and actively engaged in business within the State of Texas, and maintains an agent for service of process at CSC Lawyers Inc., 211 E. 7th St., Suite 620, Austin, TX 78701.

## Jurisdiction

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the federal patent statutes, 35 U.S.C. §§ 271 and 281-285.

5. This Court has general and specific personal jurisdiction over Amazon. Amazon has committed and continues to commit acts giving rise to this action within Texas and within this judicial district and Amazon has established minimum contacts within the forum such that the exercise of jurisdiction over Amazon would not offend traditional notions of fair play and substantial justice. For example, Amazon has committed and continues to commit acts of patent infringement in this judicial district, as set forth below. In conducting its business in Texas and this judicial district, Amazon derives substantial revenue from its patent infringement.

## Venue

6. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Amazon has committed acts within this judicial district giving rise to this action, and Amazon has and continues to conduct business in this judicial district, including one or more acts of using and offering infringing media systems; using, selling, and offering to sell Amazon tablets and smartphones; and support to Amazon's customers in this judicial district. In addition, Amazon operates five fulfillment centers in the State of Texas. One of these fulfillment centers is in Schertz, Texas which is located within this judicial district.

7. Venue in the Western District of Texas is also proper because Affinity Labs is headquartered in this judicial district in Dripping Springs, Texas.

8. Venue in the Western District of Texas is also proper because the majority of Affinity Labs' documents and relevant evidence is located at Affinity Labs' headquarters within this judicial district and numerous witnesses are also located within this judicial district.

9. Venue in the Western District of Texas is also proper because Affinity Labs is organized and governed by the limited liability company laws of Texas and is subject to taxes in Texas. Affinity Labs maintains a registered agent for service of process in Texas.

10. Venue in the Western District of Texas is also proper because of judicial economy. The Honorable Judge Walter S. Smith, Jr. in this judicial district is currently presiding over *Affinity Labs of Texas, LLC v. Bosch, LLC*, C.A. No. 6:14-cv-00396, which involves two other Affinity Labs patents in the same patent family as the Asserted Patent in this matter, United States Patent Nos. 8,554,191 (the '191 patent) and 8,588,680 (the '680 patent). Moreover, Magistrate Judge Jeffrey Manske in this judicial district presided over the following seven Affinity Labs matters, which also involved the '191 and '680 patents: *Affinity Labs of Texas, LLC v. Ford Motor Company*, C.A. No. 6:13-cv-00363; *Affinity Labs of Texas, Inc. v. General Motors*, C.A. No. 6:13-cv-00379; *Affinity Labs of Texas, Inc. v. Nissan*, C.A. No. 6:13-cv-00369; *Affinity Labs of Texas, Inc. v. Toyota*, C.A. No. 6:13-cv-00365; *Affinity Labs of Texas, Inc. v. Honda*, C.A. No. 6:13-cv-00367; *Affinity Labs of Texas, Inc. v. Jaguar*, C.A. No. 6:13-cv-00368; and *Affinity Labs of Texas, Inc. v. Volvo*, C.A. No. 6:13-cv-00366.

**Background**

11. Affinity Labs was founded in 2008 by Russell White and Harlie Frost.

12. Russell White is a successful entrepreneur and patent attorney. Mr. White grew up in Houston, Texas, and has an undergraduate degree in mechanical engineering from Texas A&M. Mr. White also graduated from the University of Temple Law School.

After earning his law degree, Mr. White co-founded SBC Knowledge Ventures, an entity within AT&T.

13. Mr. White is also a prolific inventor. Mr. White is listed as an inventor on at least thirty-two separate United States patents.

14. On March 28, 2000, Mr. White and Kevin R. Imes filed a detailed patent application, No. 09/537,812 (the '812 application) with the United States Patent and Trademark Office (PTO).

15. The '812 application broadly addressed the problem of accessing, managing, and communicating digital audio and video content. In doing so, the '812 application disclosed a number of inventions relating to creating a new media ecosystem with a portable electronic audio device, such as a smartphone, at its center.

16. Mr. White and Mr. Imes made this disclosure in the '812 application over a year before the iPod was released in October 2001, approximately 3 years before the iTunes Store sold its first song, 7 years before the first iPhone was sold, and 8 years before the App Store was launched.

17. On April 1, 2014, the PTO issued United States Patent No. 8,688,085, entitled "System and Method To Communicate Targeted Information" (the '085 patent or Asserted Patent), a copy of which is attached as Exhibit A. The '085 patent issued from a continuation application claiming priority to the '812 application, which was filed with the PTO on March 28, 2000. The '085 patent is presumed valid, and is valid.

18. Patents in the same patent family as the '085 patent have been cited by major businesses in the computer, software, communications, automotive, and mobile industries.

19.     Numerous other companies have recognized the value and importance of Affinity Labs' innovation. For instance, twenty-eight companies have licensed Affinity Labs' patent portfolio for the patents in the same family as the '085 patent.

20.     Harlie Frost, President of Affinity Labs, contacted Jeffrey P. Bezos, President, CEO, and Chairman of Amazon, to offer a license to Affinity Labs' patent portfolio to Amazon.

21.     Mr. Bezos and Amazon did not agree to license the '085 patent or any patent in Affinity Labs' patent portfolio.

22.     Amazon does not have a license to the '085 patent or any patent in Affinity Labs' patent portfolio.

## Count I
### Infringement of U.S. Patent No. 8,688,085 by Amazon

23.     Affinity Labs restates and realleges each of the allegations set forth above and incorporates them herein.

24.     Affinity Labs holds all legal title, interest, and rights in the '085 patent.

25.     Amazon did not and does not have authority to make, use, sell, or offer for sale any system covered by any claim of the '085 patent.

26.     Amazon has and continues to manufacture, use, and market, without authority, a media system that includes www.amazon.com and the Amazon Music application for tablets and smartphones. For instance, Amazon manufacturers, sells, and offers to sell Amazon Kindle Fire tablets and Amazon Fire smartphones, which include the Amazon Music application pre-loaded on those devices. In addition, Amazon makes, uses, and offers for use the Amazon Music application for download on non-Amazon tablets and smartphones, such as on Samsung Galaxy S III.

27. Amazon's media system can maintain information about available media content, such as music.

28. The website www.amazon.com is associated with Amazon's media system.

29. Amazon's media system includes a log-on feature on www.amazon.com.

30. Amazon's media system is capable of offering a portion of a website that is customized for a specific user after that user logs on to www.amazon.com.

31. Amazon's media system is capable of offering a library of media content, such as music, after the user logs on to www.amazon.com. For instance, Amazon's media system offers its users the ability to store media content, such as music, which is available to the user after the user logs on to www.amazon.com.

32. Amazon's media system is capable of allowing a user to browse through the library of media content based on title or artist. For instance, Amazon's media system includes a browse feature by artist, album, song title, and genre.

33. Amazon's media system is capable of allowing a user to request to stream media content, such as music, from the library. For instance, if a user selects a song from the library, Amazon will stream the song to the user so it will be played.

34. Amazon's media system is capable of allowing a user to add media content, such as music, to his or her library. For instance, Amazon's media system includes a Digital Music page where a user can purchase songs or albums, and add that content to his or her library.

35. Amazon's media system also includes a non-transitory storage medium on which it maintains the Amazon Music application. Upon a request from a user of a wireless handheld device such as a smartphone or tablet, this Amazon music application can be

downloaded from Amazon's non-transitory storage medium to the wireless handheld device for execution.

36. The Amazon Music application is capable of presenting a graphical user interface on a wireless handheld device, which includes at least a portion of the customized website presented after a user logs on to www.amazon.com, as set forth in paragraphs 28-35.

37. The Amazon Music application also allows a user to request to stream media content, such as music, from the library to a wireless handheld device.

38. In violation of 35 U.S.C. § 271(a), Amazon has infringed, and if not enjoined, will continue to infringe the '085 patent by manufacturing, using, and offering, without authority, the media system described in the paragraphs above that are covered by one or more claims of the '085 patent, literally and/or under the doctrine of equivalents, in this judicial district and elsewhere in the United States.

39. For example, Amazon directly infringes at least claims 1 and 14 of the '085 patent at least by having and continuing to make, use, and offer its media system described above, including features on www.amazon.com and the Amazon Music application.

40. Amazon has known of the '085 patent at least since May 13, 2014. For instance, Mr. Frost, President of Affinity Labs, e-mailed Amazon's Senior Corporate Counsel, Patents, for Amazon, Scott D. Sanford, on May 13, 2014. In that correspondence, Mr. Frost identified the '085 patent to Mr. Sanford and alleged that Amazon infringed the '085 patent.

41. Mr. Sanford responded to Mr. Frost that Amazon was examining this issue. But Mr. Frost never received a substantive response about Amazon's infringement of the '085 patent from Mr. Sanford or anyone else at Amazon.

42. Counsel for Affinity Labs sent another letter to Mr. Sanford on November 19, 2014. This letter again identified the '085 patent and Amazon's infringement of the '085 patent.

43. Neither Mr. Sanford nor anyone at Amazon provided a substantive response to this November 19, 2014 letter regarding Amazon's infringement of the '085 patent.

44. Despite Affinity Labs' written notice of Amazon's infringement of the '085 patent, Amazon has not stopped its infringement. Instead, Amazon continues to make, use, and offer the media system that infringes the '085 patent.

45. Amazon's infringement of the '085 patent has been and is willful because Amazon has known of the '085 patent, known that its media system infringes the '085 patent, and yet continues to offer its media system in at least reckless disregard of Affinity Labs' patent rights.

46. In violation of 35 U.S.C. § 271(b), Amazon has indirectly infringed one or more claims of the '085 patent by inducing others (e.g., its customers and end users) to directly infringe the '085 patent in this judicial district and elsewhere in the United States.

47. Since at least May 13, 2014, Amazon knowingly encouraged and intended—and continues to encourage and intend—for its customers and end users to directly infringe the '085 patent, including at least claims 1 and 14, by instructing and advertising that its end users and customers create profiles allowing end users and customers to log into www.amazon.com and access a customized website; create a library of media content, such as music, associated with their account; browse for media content by at least title and artist; add media content to their library; request streaming delivery of media content; and access at least some portion of their customized webpage through the Amazon

Music application on a tablet or smartphone. Amazon intended these actions by its end users and customers while the '085 patent is in force.

48. For example, Amazon's website instructs its customers and end users on the use of Amazon's media system that includes the Amazon Music application and www.amazon.com. Specifically, Amazon instructs its customers and end users "to install [the Amazon Music application] by launching the Amazon Appstore app or Google Play and searching for 'Amazon Music,'" to "complete the app download and sign in . . . making sure you enter the same Amazon account and password you use to shop for music and access your music library on the web," to allow access to a customer or end user's customized page. Further, Amazon instructs its customers and end users to access music "purchased or added to your music library" and to "shop for new music from the Digital Music Store."[1]

49. As a further example, Amazon's website instructs it customers and end users to "launch the Amazon Music app or navigate to your music library on the web and browse and search by playlists, artists, albums, songs or genres" and to request streaming delivery of media content by "select[ing] a song and click[ing] or tap[ping] Play, or OK."[2]

50. In addition, Amazon markets and encourages use of its media system offering a library of customized media content by promoting the capability of the media system to allow a customer or end user to "enjoy your music anywhere without having to

---

[1] See http://www.amazon.com/gp/help/customer/display.html/ref=hp_left_v4_sib?ie=UTF8&nodeId=201379540 (last accessed January 29, 2015) (Exhibit B).

[2] See http://www.amazon.com/gp/help/customer/display.html/ref=hp_left_v4_sib?ie=UTF8&nodeId=201379460 (last accessed January 29, 2015) (Exhibit C).

sync or transfer" and stating, "any music you buy or add to your Amazon Music Library from your computer will be waiting for you on all of your devices, ready to play . . . ."[3]

51. Amazon knew of the '085 patent and knew that its instructions and encouragement, and its continued instruction and encouragement, has and will continue to result in direct infringement of the '085 patent by end users and customers of its media system. Amazon, therefore, specifically intended to induce its customers and end users to directly infringe the '085 patent when they used Amazon's media system that includes www.amazon.com and the Amazon Music application.

52. Alternatively, Amazon knew that there was a high probability that the acts by its customers and end users would infringe the '085 patent but took deliberate steps to avoid learning of that infringement.

53. In violation of 35 U.S.C. § 271(c), Amazon actively contributes to the infringement and actively continues to commit such contributory infringement of the '085 patent in this judicial district and elsewhere.

54. Amazon has made, used, and offered, and continues to make, use, and offer a media system associated with www.amazon.com, and has and continues to do so while the '085 patent is in force.

55. Amazon made, used, and offered, and continues to make, use, and offer at least components of the media system, including www.amazon.com and the Amazon Music application for smartphones and tablets, that infringe the '085 patent, and for which no other substantial non-infringing uses exist. These components include a material part of the claimed inventions of the '085 patent. Amazon has known that these components are

---

[3] See http://www.amazon.com/gp/feature.html?ie=UTF8&docId=1001316131 (last accessed January 29, 2015) (Exhibit D).

used by its end users and customers in a manner that infringes the '085 patent, and continues to offer these components for such use and infringement. Alternatively, Amazon knew that there was a high probability that the acts by its customers and end users would infringe the '085 patent but took deliberate steps to avoid learning of that infringement.

56. Amazon does not have a license or permission to use the claimed subject matter in the '085 patent.

57. Affinity Labs has been injured and has been caused significant financial damage as a direct and proximate result of Amazon's infringement of the '085 patent.

58. Amazon will continue to infringe the '085 patent, and thus cause irreparable injury and damage to Affinity Labs unless enjoined by this Court.

59. Affinity Labs is entitled to recover from Amazon the damages sustained by Affinity Labs as a result of Amazon's wrongful acts in an amount subject to proof at trial.

## Demand for Trial by Jury

Affinity Labs demands a jury trial on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## Prayer for Relief

Plaintiff Affinity Labs prays for the following relief:

1. A declaration that Amazon.com, Inc. and Amazon Digital Services, Inc. have infringed and are infringing the '085 patent and are liable to Affinity Labs for infringement;

2. An order enjoining Amazon.com, Inc. and Amazon Digital Services, Inc. from infringing the '085 patent;

3. If a permanent injunction is not granted, a judicial determination of the conditions for future infringement such as a royalty bearing ongoing royalty;

4. An award of damages, including pre-judgment and post-judgment interest, in an amount adequate to compensate Affinity Labs for Amazon.com, Inc.'s and Amazon Digital Services, Inc.'s infringement of the '085 patent, and that the damages be trebled pursuant to 35 U.S.C. § 284;

5. An equitable accounting of damages owed by Amazon.com, Inc. and Amazon Digital Services, Inc. for the period of infringement of the '085 patent, following the period of damages established by Affinity Labs at trial;

6. A finding that this case is exceptional and an award of attorneys' fees pursuant to 35 U.S.C. § 285;

7. An award of costs, expenses, and disbursements; and

8. Such other and further relief as the Court deems Affinity Labs may be entitled to in law and equity.

Dated: February 3, 2015

Respectfully submitted,

By: /s/ John P. Palmer

**Naman Howell Smith & Lee, PLLC**
John P. Palmer (State Bar No. 15430600)
P.O. Box 1470
Waco, TX 76703-1470
(254) 755-4100
Fax: (254) 754-6331
palmer@namanhowell.com

**Robins Kaplan LLP**
Ronald J. Schutz (MN Bar No. 130849)
(*pro hac vice to be submitted*)
Cyrus A. Morton (MN Bar No. 287325)
(*pro hac vice to be submitted*)
Patrick M. Arenz (MN Bar No. 386537)
(*pro hac vice to be submitted*)
Daniel R. Burgess (MN Bar No. 389976)
(*pro hac vice to be submitted*)
Shira T. Shapiro (MN Bar No. 390508)
(*pro hac vice to be submitted*)
Kristine A. Tietz (MN Bar No. 393477)
(*pro hac vice to be submitted*)
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
RSchutz@robinskaplan.com
CMorton@robinskaplan.com
PArenz@robinskaplan.com
DBurgess@robinskaplan.com
SShapiro@robinskaplan.com
KTietz@robinskaplan.com

**Attorneys for Plaintiff**
**Affinity Labs of Texas, LLC**

## Certificate of Service

I hereby certify that on February 3, 2015, I caused a true and correct copy of this document (Complaint for Patent Infringement) to be served on all counsel of record via Electronic Case Filing (ECF) pursuant to Local Rule CV-5.

Dated: February 3, 2015                                         /s/ *John P. Palmer*
                                                                John Palmer