**United States District Court**
**Western District of Texas**
**Waco Division**

| | | |
|---|---|---|
| Affinity Labs of Texas, LLC, | ) | |
| | ) | The Honorable Jeffrey C. Manske |
| Plaintiff, | ) | |
| | ) | Case No. 6:15-cv-00029-WSS-JCM |
| vs. | ) | |
| | ) | **Jury Trial Demanded** |
| Amazon.com, Inc. | ) | |
| Amazon Digital Services, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff Affinity Labs of Texas, LLC's Opposition to Defendants'**
**Motion for Judgment on the Pleadings**

**Table of Contents**

**Introduction** ......................................................................................................................... 1

**Factual Background** .............................................................................................................. 2

**Argument** ............................................................................................................................... 3

I.  The '085 patent does not claim an abstract idea as the Supreme Court has used the term.... 4

    A.  The claims in the '085 patent are not directed to the abstract idea of "playing media on a portable device." ......................................................................................... 4

    B.  Amazon's proposed concept of playing media on a portable device also fails because the concept—and the '085 patent claims—is concrete and tangible. ........................... 6

    C.  The '085 patent claims are not directed to any category of abstract idea that the Supreme Court or Federal Circuit has found ineligible for patent protection. ............. 9

II. The claims contain inventive concepts that transform the inventions beyond Amazon's alleged abstract idea, and preclude any preemption concern of that idea.......................... 11

    A.  The '085 patent claims an inventive combination of hardware and software components that are necessarily rooted in computer technology. ............................... 12

    B.  The claimed inventions of the '085 patent do not preempt the playing of media on a portable device. ................................................................................................ 15

    C.  The '085 patent claims satisfy the machine-or-transformation test............................ 17

III. The Defendants' motion is premature because it asks this Court to make factual conclusions about the claimed inventions based only on their attorneys' argument and without a sufficient factual record. ................................................................................... 18

**Conclusion** ......................................................................................................................... 20

# Table of Authorities

## Cases

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................. 15

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ..................................................... 3, 9, 11, 12, 15

*Ameritox, Ltd. v. Millennium Health, LLC*,
   No. 13-cv-832-WMC, 2015 U.S. Dist. LEXIS 53818 (W.D. Wisc. Apr. 24, 2015) ............... 16

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   365 U.S. 336 (1961) ............................................................................ 6

*Bancorp Servs., LLC v. Sun Life Assurance Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) ................................................................ 18

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ..................................................................... 3, 9, 11, 17

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ................................................................. 9

*Cal. Inst. of Tech. v. Hughes Commc'ns, Inc.*,
   No. 2:13-cv-07245, 2014 U.S. Dist. LEXIS 156763 (C.D. Cal. Nov. 3, 2014) ............... 14, 15

*Certified Measurement, LLC v. Centerpoint Energy Houston Elec. LLC*,
   No. 14-CV-627-RSP, 2015 U.S. Dist. LEXIS 39821 (E.D. Tex. Mar. 29, 2015) ............. 18, 19

*Clear with Computers v. Altec Indus.*,
   No. 6:14-cv-00089, 2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3, 2015) ................. 8

*Cogent Med., Inc. v. Elsevier Inc.*,
   No. C-13-4479-RMW, 2014 U.S. Dist. LEXIS 139856 (N.D. Cal. Sept. 30, 2014) ........... 8, 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) ............................................................. 9, 19

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................. 8

*Data Distribution Techs., LLC v. Brer Affiliates, Inc.*,
   No. 12-4878, 2014 U.S. Dist. LEXIS 115543 (D.N.J. Aug. 19, 2014) ...................... 18

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ......................................................... 9, 12, 15

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ........................................................................... 11

*DietGoal Innovations LLC v. Bravo Media LLC*,
   33 F. Supp. 3d 271 (S.D.N.Y. 2014) ........................................................... 8

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014) ................................................................. 9

*Gottschalk v. Benson*,
   409 U.S. 63 (1972)...................................................................................................... 3, 9

*Helios Software LLC v. Spectorsoft Corp.*,
   No. 12-081-LPS, 2014 U.S. Dist. LEXIS 135379 (D. Del. Sept. 18, 2014) ........................... 17

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) (en banc),
   *aff'd on other grounds*, 561 U.S. 593 .................................................................................. 17

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) (en banc),
   *aff'd on other grounds*, 561 U.S. 593 (2010)....................................................................... 17

*In re TLI Commc'ns. LLC Patent Litig.*,
   No. 14-md-2534, 2015 U.S. Dist. LEXIS 18997 (E.D. Va. Feb. 6, 2015) .............................. 13

*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*,
   No. 13-1274-SLR, 2014 U.S. Dist. LEXIS 174725 (D. Del. Dec. 18, 2014)........................... 16

*Intellectual Ventures I LLC v. Symantec Corp.*,
   No. 10-1067, 2015 U.S. Dist. LEXIS 52527 (D. Del. Apr. 22, 2015)........................................ 8

*Intellectual Ventures LLC v. Capital One Financial Corp.*,
   No. PWG-14-111, 2015 U.S. Dist. LEXIS 62601 (D. Md. May 12, 2015) .................... 5, 7, 13

*Jones v. Hardy*,
   727 F.2d 1524 (Fed. Cir. 1984) ............................................................................................ 19

*Kenexa Brassring, Inc. v. HireAbility.com, LLC*,
   No. 12-cv-10943, 2015 U.S. Dist. LEXIS 56156 (D. Mass. Apr. 28, 2015)............................ 19

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)............................................................................................................. 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)................................................................................................. 3, 11, 14

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*,
   No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408 (D. Del. Apr. 15, 2015).............................. 16

*Mobile-Plan-IT v. Facebook Inc.*,
   No. 14-cv-1709-RS, 2015 U.S. Dist. LEXIS 52343 (N.D. Cal. Apr. 20, 2015)...................... 16

*Modern Telecom Sys. LLC v. Juno Online Servs., Inc.*,
   No. 14-0348, 2015 U.S. Dist. LEXIS 33835 (C.D. Cal. Mar. 17, 2015).................... 15, 16, 19

*Morales v. Square, Inc.*,
   No. 13-cv-1092, 2014 U.S. Dist. LEXIS 178525 (W.D. Tex. Dec. 30, 2014) ........................ 11

*Morsa v. Facebook, Inc.*,
   No. 14-161-JLA (JPRx), 2014 U.S. Dist. LEXIS 180968 (C.D. Cal. Dec. 23, 2014)............ 6, 7

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14-cv-01622-HSG, 2015 U.S. Dist. LEXIS 44856 (N.D. Cal. Apr. 6, 2015) .................... 8

*Parker v. Flook*,
    437 U.S. 584 (1978) ..................................................................................... 3, 9

*Parks v. Booth*,
    102 U.S. 96 (1880) ......................................................................................... 10

*Planet Bingo, LLC v. VKGS, LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ............................................................... 9

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
    601 F. 3d 1319 (Fed. Cir. 2010) ............................................................... 17, 18

*Stoneeagle Servs., Inc. v. Pay-Plus Solutions, Inc.*,
    No. 13-cv-2240-T-33MAP, 2015 U.S. Dist. LEXIS 15144 (M.D. Fla. Feb. 9, 2015) ............. 20

*Trading Techs. Int'l v. CQG, Inc.*,
    No. 05-cv-4811, 2015 U.S. Dist. LEXIS 22039 (N.D. Ill. Feb. 24, 2015) ........................ 11, 16

*TriPlay, Inc. v. WhatsApp, Inc.*,
    No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068 (D. Del. April 28, 2015) ........................... 20

*Ultramercial Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013), *vacated and remanded*
    *WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014) ........................................... 19

*Ultramercial Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................... 4, 6, 9, 17, 19

*Wolf v. Capstone Photography, Inc.*,
    No. 13-cv-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014) ........................... 8

**Statutes**

35 U.S.C. § 101 .................................................................................. 3, 9, 14, 15, 20

35 U.S.C. § 102 ........................................................................................... 3, 14

35 U.S.C. § 103 ................................................................................................ 3

35 U.S.C. § 112 ................................................................................................ 3

**Introduction**

Amazon's motion to invalidate the '085 patent on the pleadings is a request to dramatically and improperly extend the reach of the limited abstract-idea exception to the broad patent eligibility afforded by Congress under § 101. This Court should deny this request and Amazon's motion for at least the following reasons. First, Amazon has not met its burden to prove the claims in the '085 patent include an abstract idea. The claimed inventions are a tangible and concrete media management and distribution system for streaming media in connection with an application for execution on a wireless handheld device that includes a customized user interface. Indeed, even under Amazon's overly-generalized characterization of the claims as "playing media on a portable device," the system claims are a "machine" and the method claims a "process" under § 101. And Amazon has not identified anything in the claims that even arguably relates to any category of subject matter found to be abstract by the Supreme Court or Federal Circuit. The claims do not include or rest upon mathematical algorithms or business methods or fundamental economic practices. To the contrary, the inventions are technical solutions to technical problems arising in the state of the art in 2000.

Second, assuming "playing media on a portable device" is abstract, Amazon has failed to prove through its conclusory attorney argument that the claims of the '085 patent are "conventional." Like many courts have held, including the Federal Circuit, the claims in the '085 patent far surpass what is "only a threshold test" under § 101 for an inventive concept because they are necessarily rooted in computer technology, and are not just an application of a pre-Internet business method now applied on a computer. In fact, the claimed inventions also include a customized user interface which by itself is an inventive concept. This conclusion is compelled by Amazon's failure to prove any risk that the claimed inventions will disproportionately tie up "playing media on a portable device." Numerous options remain that both pre- and post-date the inventions in the '085 patent.

The Supreme Court has emphasized the abstract-idea exception as a doctrine of restraint which must be applied carefully and narrowly. This Court should follow that guidance here and

deny Amazon's motion. The claimed inventions are eligible for patentability, and Amazon has not met its burden on the pleadings of clear-and-convincing evidence to show otherwise.

### Factual Background

Amazon alleges that the inventions embodied in the '085 patent are "conventional" or "well known." But in 2000, consumers generally had limited options to listen or view media on their mobile devices. At this time, the iPod was still over a year away from release; Apple did not launch iTunes until 2003; and the iPhone and App store were not available until 2007-2008. *See* Compl. ¶16; *see also* Almeroth Decl. ¶ 9. In 2000, therefore, consumers of streaming media were generally tied to a wired connection, such as through a personal computer. Almeroth Decl. ¶ 7. If a consumer wanted media with them on-the-go, they were generally limited to the storage capacity of their portable device (*e.g.*, previously downloaded MP3s to a player), or the availability of media stored on cassette tapes or CDs. *Id*. For instance, the first generally available portable MP3 player was not released until 1998. That player was unable to receive streaming media, and it did not have a customized user interface. Almeroth Decl. ¶ 8.

Russell White and Kevin Imes overcame these limitations by conceiving of a media management and distribution system that allows streaming of a rich collection of media to a user, so that the user can access and play that media on a mobile device. *See e.g.*, U.S. Patent No. 8,688,085 (the "'085 patent"), Ex.[1] A at 18:23-47, 19:22-42, 20:6-24. Thus users were no longer tethered to their home computers, or limited by the storage capacity of their portable devices. *See id*. at 7:20-25; *see also generally* Almeroth Decl. ¶ 14. Mr. White and Mr. Imes's invention further incorporated a customized user interface to provide consumers a consistent "look and feel" whether they were accessing their media library through a website or through a software application loaded on their device. *Id*. at 18:23-47, 19:22-42, 20:6-24.

Mr. White and Mr. Imes first described their inventions in a patent application, No. 09/537,812 (the '812 application), filed on March 28, 2000. *See* Compl. ¶ 13. These inventions

---

[1]    Exhibits are attached to the Declaration of Patrick M. Arenz.

were then claimed in an application that issued as the '085 patent, on April 1, 2014. The '085 patent includes three independent claims (1, 8, and 14). All three independent claims address a media management and distribution system for distributing media in connection with an application for execution on a wireless handheld device that includes a customized user interface, although additional limitations vary among the three claims.

**Argument**

The Supreme Court's precedent on § 101 and the abstract-idea exception includes five foundational principles that are critical to any §101 analysis. First, "§ 101 patent-eligibility is *only a threshold test*:" The Patent Act sets forth more stringent standards for patentability beyond §101, such as §102 (novelty), §103 (non-obviousness), and §112 (particularly described). *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (emphasis added). Second, the abstract-idea exception to §101 focuses on excluding "patents that claim the '*buildin[g] block[s]*' of human ingenuity," as opposed to other patent claims "that integrate the building blocks into something more," which are patent eligible. *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2011)). Third, the justification for the abstract-idea exception is "one of preemption." *See id.* Fourth, the abstract-idea exception is a limited doctrine, and the Supreme Court has made clear it "tread[s] carefully in construing this exclusionary principle lest it *swallow all of patent law*." *See id.* (emphasis added). Finally, and relatedly, the *only* abstract ideas that the Supreme Court has identified are (1) mathematical algorithms and (2) fundamental economic practices. *See Gottschalk v. Benson*, 409 U.S. 63 (1972) (mathematical algorithm); *Parker v. Flook*, 437 U.S. 584 (1978) (mathematical algorithm); *Bilski*, 561 U.S. 593 (2010) (fundamental economic practice of risk hedging); *Alice*, 134 S Ct. 2347 (2014) (fundamental economic practice of intermediated settlement). These five foundational principles are critical to any analysis under §101, and indeed, compel a finding that the claims in the '085 patent are eligible.

I.     **The '085 patent does not claim an abstract idea as the Supreme Court has used the term.**

    A.     **The claims in the '085 patent are not directed to the abstract idea of "playing media on a portable device."**

Amazon first fails its burden of proof under Step 1 by mischaracterizing the inventions in the '085 patent as simply "playing media on a portable device." Def. Br. at 6. For starters, the claims are directed to a network based media system, not to the portable device itself. Whether claims are directed to an abstract idea for the purposes of a Section 101 analysis must begin with the claim language itself. *See Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) ("We first examine the *claims* because claims are the definition of what a patent is intended to cover.") (emphasis added). Indeed, the PTO recognizes this same approach by focusing on the claims at issue. *See generally Abstract Ideas*, USPTO Suppl. to 2014 Interim Eligibility Guidance, Ex. B.[2] And while some district courts have asked what the purpose of the claimed invention is, or what the claims are directed to under Step 1, Amazon's proposal is so broad that it is untethered to the claim language altogether. Indeed, Amazon is forced to exclude and re-write not just the *majority* of claim elements, but *virtually all* of the claim elements. For instance, Claim 14 cannot be said to be described as "playing media on a portable device":

    14. A media system, comprising:

    ~~a network based media managing system that maintains a library of content that a given user has a right to access and a customized user interface page for the given user;~~

    ~~a collection of instructions stored in a non-transitory storage medium and configured for execution by a processor of a handheld wireless device, the collection of instructions operable when executed: (1) to initiate presentation of a graphical user interface for the network based media managing system; (2) to facilitate a user selection of content included in the library; and (3) to send a request for a streaming delivery of the content; and~~

---

[2]     For instance, in Example 1, the PTO explained that the claimed invention was "directed towards physically isolating a received communication on a memory sector and extracting malicious code from that communication to create a sanitized communication in a new data file." Ex. B at 3.

a network based delivery resource maintaining a list of network locations for at least a portion of the content, the network based delivery resource configured to respond to the request by retrieving the portion from an appropriate network location and streaming [playing content] a representation of the portion to the handheld wireless device.

Ex. A at 20:6-24. This is clearly incorrect.

The Special Master in *Intellectual Ventures LLC v. Capital One Financial Corp.* recently addressed this issue, and Affinity recommends the decision to the Court, particularly for its treatment of the controlling case law, and application of Step 1. No. PWG-14-111, 2015 U.S. Dist. LEXIS 62601 (D. Md. May 12, 2015). The patent involved a way to allow non-technical persons to edit XML documents, and the defendant alleged that the claimed inventions "embody the abstract idea of 'retrieving user-specific information using pointers . . . and that it is both the object and primary action of the alleged invention as claimed.'" *Id*. at *47. The defendant further argued "that idea is 'akin to the age old concept of calling home to have a family member look up something in a file,' and that it simply describes a way for a "user to access his or her information.'" *Id.* The Special Master rejected these arguments because they ignored important and *integral* claim elements. For instance, as the Special Master explained:

> Capital One's characterization of the idea embodied by the '002 patent *misconstrues* the claims. In particular, it ignores the claims' use of the 'mobile interface' as a *key* and *integral* aspect of the claimed invention, as well as the *other verbiage* in the *claims*. See supra at 26-29. Also, the plain language of the claims features the mobile interface; it is an *important* and *integral subject* in *Claims* 1, 9, 11, 34 and 37, and is mentioned four times in Claim 1, two times in Claim 9, four times in Claim 11, three times in Claim 34, and once in Claim 37.

*Id.* at *48-49 (emphasis added).

Amazon's arguments suffer from the same problem. As an initial matter, all of the independent claims—1, 8, and 14—address *distributing* and *streaming* media and not just the broader notion of *playing* media. The latter of which encompasses files, compact disks, cassette tapes, among other means of playback not addressed by the claimed inventions of the '085 patent. In addition, all the independent claims in the '085 patent include some sort of *customized user interface*. Ex. A at 18:30-47, 19:25-29, 20:7-10. Amazon's broad purpose ignores the fundamental nature of the media *distribution* in the claimed inventions. Amazon's "playing

5

media on a portable device" ignores the network-based media managing system that works in conjunction with a separate application—or "collection of instructions" in Claim 14—which is capable of receiving the streaming content when executed on a portable electronic device. Ex. A at 20:19-24. Instead, the purpose of "playing media on a portable device" envisions only the portable device – the recipient of what the claimed system can deliver.

Amazon bears the burden of persuasion and proof with this motion. Its failure to propose a legitimate characterization of the claimed inventions in the '085 patent is the first ground for the Court to deny the motion. And while Affinity Labs does not share any burden on this issue, and while the claimed inventions cannot be reduced to an "essential' element," "gist" or "heart" of the invention,[3] it is error to characterize the claimed inventions without acknowledging that all the independent claims of the '085 patent address at least a media management and distribution system for distributing and streaming media in connection with an application for execution on a wireless handheld device that includes a customized user interface. *See* Ex. A at 18:23-47, 19:22-42, 20:6-24.

### B.     Amazon's proposed concept of playing media on a portable device also fails because the concept—and the '085 patent claims—is concrete and tangible.

Even if Amazon's broad characterization is accepted, its argument still fails because playing media on a portable device is tangible and concrete—not abstract. Almeroth Decl. ¶ 11. The Federal Circuit has defined an abstraction as "an idea, having no particular *concrete* or *tangible* form." *Ultramercial*, 772 F.3d at 715; *see also Morsa v. Facebook, Inc.*, No. 14-161-JLA (JPRx), 2014 U.S. Dist. LEXIS 180968, at *15 (C.D. Cal. Dec. 23, 2014) ("The *dispositive* inquiry [for Step 1] is whether the concept to which a claim is drawn has 'no particular concrete or tangible form.'") (citing *Ultramercial* 772 F.3d at 715) (emphasis added).  For example in *Ultramercial*, the Federal Circuit determined that the claimed invention was directed to the business method of "using advertising as an exchange for currency." 772 F.3d at 715. Under Step 1, the Federal Circuit found this idea to be "an abstraction." *See id.* Likewise in *Morsa*, the court

---

[3]     *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345 (1961).

found unpatentable claims directed towards "targeting advertisements to certain consumers" and "using a bidding system to determine when and how advertisements will be displayed" because the claims had "no particular concrete or tangible form." 2014 U.S. Dist. LEXIS 180968 at *15. Both of these cases attempted to claim ideas—and specifically, business methods—independent of any concrete or tangible form. Thus, while at times it may seem that the analysis of what *is* an abstract idea is similar to Justice Potter's famous "I know it when I see it" expression, the case law of the Supreme Court and Federal Circuit is actually much closer to "I know it when *I don't* see it." In other words, you do not see math or economic practices because they are not physical or tangible. But you do see computers, and the claimed media systems in the '085 patent, which are concrete and tangible.

The '085 patent claims stand in distinct contrast to these abstractions in *Ultramercial* and *Morsa*. Playing media on a portable device is technological in nature, and as a result, inherently concrete and tangible. It therefore cannot be an abstract idea ineligible for patent protection under §101. Again, the recent decision in *Intellectual Ventures I LLC v. Capital One* is instructive. Like the customized user interface in the '085 patent, the Special Master concluded that the "*mobile interface* is in fact a *tangible invention*—'it is a user interface (implemented by software) that is embodied in a *tangible medium* (e.g., a PDA or other computing device with input and output devices) and directly and necessarily tied to computing devices.'" 2015 U.S. Dist. LEXIS 62601 at *43 (emphasis added). Further proof that the mobile interface was tangible included that it "can be perceived, interacted with and is directly tied to a machine," just like "playing media on a portable device" and the claimed inventions in the '085 patent. *See id.*

The PTO has reached the same conclusion in Example 1 of its post-*Alice* guidance. The claims in Example 1 were "directed towards *physically* isolating a received communication on a memory sector and extracting malicious code from that communication to create a sanitized communication in a new data file." Ex. B at 3 (emphasis added). The PTO confirmed that this claim was "*inextricably tied to computer technology* and distinct from the types of concepts found by the courts to be abstract. Accordingly, the claimed steps do *not* recite an abstract idea." *See id.* (emphasis

7

added). Here too, playing media on a portable device is inextricably tied to computer technology and other hardware, and they do not recite an abstract idea.

This conclusion is further compelled through other measures courts utilize to determine if a patent claim includes an abstract idea. "When analyzing whether a claim is directed to an abstract idea, some courts ask whether the claims' steps 'can be performed in the *human mind*, or by a *human using a pen and paper*.'" *See OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 U.S. Dist. LEXIS 44856, at *10 (N.D. Cal. Apr. 6, 2015) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)) (emphasis added). "Another helpful way of assessing whether the claims of the patent are *directed to an abstract idea* is to consider if all of the steps of the claim could be performed by human beings in a non-computerized 'brick and mortar' context." *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067, 2015 U.S. Dist. LEXIS 52527, at *25-26 (D. Del. Apr. 22, 2015) (emphasis added). Numerous district courts have used this test to determine if an abstract idea exists in the claims. *See*, *e.g.*, *Clear with Computers v. Altec Indus.*, No. 6:14-cv-00089, 2015 U.S. Dist. LEXIS 28816, at *11 (E.D. Tex. Mar. 3, 2015) ("The steps performed by the claimed computer elements are functional in nature and could easily be performed by a human."); *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 290 (S.D.N.Y. 2014) (invalidating patent because the method "can be performed by a human using pen and paper").

The cases relied on by Amazon bear this out. For example, *Wolf v. Capstone Photography, Inc.*, found "[t]he patents in suit merely implement[ed] basic computer technology to perform the same process, with computer systems *automating* much of the work previously done *manually*." No. 13-cv-09573, 2014 U.S. Dist. LEXIS 156527, at *29-30 (C.D. Cal. Oct. 28, 2014) (emphasis added). And *Cogent* likewise found the abstract idea was "little different than the basic concept of organizing a physical library so that *an individual can search* for information by going to the relevant portion of the library and picking a book." *Cogent Med., Inc. v. Elsevier Inc.*, No. C-13-4479-RMW, 2014 U.S. Dist. LEXIS 139856, at *11 (N.D. Cal. Sept. 30, 2014) (emphasis added). But in the '085 patent, neither Amazon's proposed concept, nor the claims themselves,

can be practiced by the human mind or by a human using a pen and paper. There is no human analog to the media management and distribution system claimed by the patent. Once again, Amazon has failed to show anything in the '085 patent is *abstract*. Instead, it is tangible and concrete invention that is eligible for patent protection under § 101.

**C.     The '085 patent claims are not directed to any category of abstract idea that the Supreme Court or Federal Circuit has found ineligible for patent protection.**

Amazon has not shown that the claimed inventions of the '085 patent fall into one of the recognized and limited categories of abstract ideas. Though the Supreme Court has refrained from "delimit[ing] the precise contours of the 'abstract ideas' category," *Alice*, 134 S. Ct. at 2357, the Supreme Court has *only* found patent claims ineligible as an abstract idea which fall into one of two categories: (1) mathematical algorithms, or (2) business methods involving fundamental economic practices. *See Gottschalk* 409 U.S. 63 (mathematical algorithm); *Flook*, 437 U.S. 584 (mathematical algorithm); *Bilski*, 561 U.S. 593 (fundamental economic practice of risk hedging); *Alice*, 134 S Ct. 2347 (fundamental economic practice of intermediated settlement). The Federal Circuit reached the similar conclusion in *DDR Holdings*. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014).[4] Since *Alice*, all Federal Circuit decisions can be reconciled with one of these two categories.[5]

---

[4]     The PTO is also consistent with this analysis, as it identifies the following categories as examples of abstract ideas: "fundamental economic practices, certain methods of organizing human activities, an idea 'of itself,' and mathematical relationships/formulas." 2014 Interim Guidance on Patent Subject Matter Eligibility, 79 Fed. Reg. 74618, 74622 (proposed Dec. 16, 2014) (to be codified at 37 CFR Part 1), *available at* http://www.gpo.gov/fdsys/pkg/FR-2014-12-16/pdf/2014-29414.pdf.

[5]     *Ultramercial*, 772 F.3d at 714 (business method using "an advertisement as an exchange or currency"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014) (business method of "a third party guarantee of a sales transaction"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (business method noting banks have long used to review and store information for their records); *Planet Bingo, LLC v. VKGS, LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014) (business method that "consists solely of mental steps which can be carried out by a human using pen and paper"); *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (mathematical algorithm noting "[w]ithout additional limitations, a process that employs *mathematical*

Even assuming Amazon's mischaracterization of the invention as "playing media on a portable device," the concept does not fall within either of these categories. First, neither party suggests that the '085 patent is directed to mathematical algorithms. Nor does Amazon's proposed concept or the claims relate to a business method that is a fundamental economic and conventional business practice. In order for Amazon to succeed, therefore, Amazon must ask this Court to expand the limited abstract-idea doctrine.

And Amazon has done just that. Amazon describes the claims of the '085 patent as directed simply to a "longstanding practice," *i.e.* "[t]he abstract idea of playing media on a portable device is no different than other historical practices for listening to music on a transistor radio or viewing a video on a portable television." Def. Br. at 11. Yet this argument suffers from at least two fatal flaws. First, neither the Supreme Court nor the Federal Circuit has identified "longstanding practices"—whatever exactly that means—to be a category in and of itself in the limited exception of the abstract-idea doctrine. Indeed, a "longstanding practice" that relates to a tangible industry and product is quite different from business methods that focus on abstract relationships between people, such as those the Supreme Court recognized in *Bilski* and *Alice*. Nor has the Federal Circuit found tangible inventions "abstract" merely because they relate to a "longstanding practice." Indeed, such a conclusion would swallow all of the patent law because virtually every patent is an improvement on something that came before. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007) ("[I]nventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.").[6] By way of example, artificial heart valves have been around for over sixty years. But that does not mean an improvement to an

---

*algorithms* to manipulate existing information to generate additional information is not patent eligible." (emphasis added)).

[6]     *See also Parks v. Booth*, 102 U.S. 96, 102 (1880) ("Modern inventions very often consist merely of a new combination of old elements or devices, where nothing is or can be claimed except the new combination.").

artificial heart valve in the 21st Century is somehow an abstract idea just because medical device companies have a "longstanding practice" of manufacturing and selling these valves. The basis for Amazon's argument, therefore, is legally wrong.

Second, Amazon's argument is factually wrong. Even if this Court were to expand the abstract-idea categories to more broadly include "fundamental concepts or longstanding practices," as the *Morales* court did and which the Supreme Court has warned against,[7] playing media on a portable device is neither. *See Morales v. Square, Inc.*, No. 13-cv-1092, 2014 U.S. Dist. LEXIS 178525, at *16 (W.D. Tex. Dec. 30, 2014). The first generally available portable MP3 player was released in 1998—around two years before the March 2000 filing date for claimed inventions in this case. Almeroth Decl. ¶ 8. And that player could not receive streaming media, let alone include the customized graphical user interface required by the '085 patent claims. *Id*.

Nor is it fair to compare the claims of the '085 patent to a "transistor radio" and "portable television," which are facially and fundamentally different. There is a sea of differences between operating a radio station and a modern mobile media distribution system. *See*, *e.g.*, *Trading Techs. Int'l v. CQG, Inc.*, No. 05-cv-4811, 2015 U.S. Dist. LEXIS 22039, at *13 (N.D. Ill. Feb. 24, 2015) (finding claims directed to an electronic trading system patent eligible because of "the apparent differences between the analog versions of trading and electronic trading").

## II.  The claims contain inventive concepts that transform the inventions beyond Amazon's alleged abstract idea, and preclude any preemption concern of that idea.

Amazon's motion also fails for the independent reason that it cannot meet its clear-and-convincing evidence burden on Step 2. As set forth below, the claimed inventions of the '085 patent are necessarily rooted in computer technology, and do not risk preempting the broad idea

---

[7]    The Supreme Court held that "Congress plainly contemplated that the patent laws would be given wide scope." *See Bilski*, 561 U.S. at 601 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)). The abstract-idea exception within § 101 is one of restraint. *See Alice*, 134 S. Ct. at 2354 (citing *Mayo*, 132 S. Ct. 1289) ("At the same time, we tread carefully in construing this exclusionary principle lest it swallow all of patent law.")

of playing media on a portable device.

### A.   The '085 patent claims an inventive combination of hardware and software components that are necessarily rooted in computer technology.

At the second *Alice* step, the Court must consider the elements in the claims "both individually" and "as an ordered combination" to determine whether the elements transform the nature of the claim into a patent-eligible application of the abstract idea or whether the claim elements merely take the abstract idea and "apply it." *See, e.g.*, *Alice*, 124 S. Ct. at 2350. Here, the Court should start with the ordered combination of the claim elements which confirms that the claimed inventions are far more than just "playing media on a portable device."

The *DDR Holdings* case is particularly instructive. In *DDR Holdings*, the claims improved on the challenge of retaining website visitors. Traditionally, a visitor was transported to a third party's website upon the click of an advertisement for a third-party product. 773 F.3d at 1257. The claimed inventions in *DDR* addressed this problem, not by reinventing the Internet, but by claiming an outsource provider that directed "the user to an automatically-generated hybrid web page that combines visual 'look and feel' elements" from the original website. *See id.* Even though the Internet and webpage technology was well-known and conventional at that time, the Federal Circuit emphasized that these claims were patent eligible. Indeed, "these claims stand apart [from *Alice* and *Ultramercial*] because they do not merely recite the performance of some *business practice known from the pre-Internet world* along with the requirement to *perform it on the Internet*. Instead, the claimed solution is *necessarily rooted in computer technology* in order to overcome a problem specifically arising in the realm of computer networks." *Id.* (emphasis added).

Here too, the claims of the '085 patent addressed a technological problem with a technological solution. Before the claimed inventions, a user interested in media content had limited options. If a user wanted to stream media, he or she was generally tied to a wired connection, such as a traditional home computer. Almeroth Decl. ¶ 7. And if a user wanted to consume media on-the-go, then he or she generally was limited to: 1) choosing content already

stored on internal memory on the portable device (i.e., a previously downloaded file on an MP3 player); or 2) choosing content stored on external media such as CDs or cassette tapes. *Id*.

The claimed inventions overcame these challenges through a media management and distribution system that allows streaming a rich collection of media to a user, so that the user can access and play that media on a mobile device. For example, Claim 1 sets forth "a media managing system" that is associated with a website "that is customized for a given user" and presents "a library of the media content" specific to that given user. The claim further allows a user to "browse," "listen," and "store" additional media as part of his or her library of content. The claim then allows a user to access this library of media content across devices by virtue of "an application for use with a wireless handheld device" that, when executed, presents a graphical user interface with "at least a partial representation of the portion of the website that is customized for the given user." Thus, the application allows the wireless handheld device to correspond to the customization on the website, making the customized media library portable and consistent over multiple platforms. This is discussed generally in the specification. *See*, *e.g.*, Ex. A at 10:10-23, 11:20:35. As a result, users were no longer tethered to their home computers, or limited to small personal collections of content on a mobile device.

Even further, the customized user interface in the claimed inventions by itself is an inventive concept. Some courts have described the inventive concept analysis as whether an element is an "integral part" of the invention. S*ee*, *e.g.*, *In re TLI Commc'ns. LLC Patent Litig.*, No. 14-md-2534, 2015 U.S. Dist. LEXIS 18997, at *43 n.34 (E.D. Va. Feb. 6, 2015) (citing *Cogent*, 2014 U.S. Dist. LEXIS 139856). This customized user interface includes "a partial representation of the portion of the website that is customized for the given user." *See*, *e.g.*, Ex. A at 18:30-47, 19:25-29, 20:7-10. Thus, just as in *DDR*, the user receives a similar "look and feel" of their media library on his or her mobile device as when the user accesses their media library on the website. *See also Intellectual Ventures*, 2015 U.S. Dist. LEXIS 62601 at *53 (concluding that "mobile interface" was sufficient to establish patentability under Step 2). The customized graphical user interface is therefore integral—and indeed, essential—to the

management, selection, and access to streaming media.

Nor were the claimed inventions of the '085 patent well-known, conventional, or routine as of March 2000. Importantly, "a claim element is not conventional just because it appears in prior art." *Cal. Inst. of Tech. v. Hughes Commc'ns, Inc.*, No. 2:13-cv-07245, 2014 U.S. Dist. LEXIS 156763, at *10 (C.D. Cal. Nov. 3, 2014) And "courts should remember that a series of conventional elements may together form an unconventional, patentable combination." *Id.* at *11 (referring to language originating in *Mayo* in which the Supreme Court explained that a doctor performing steps that doctors had always performed was conventional. *See, e.g., Mayo*, 132 S. Ct. 1289). Here, Amazon's unsupported attorney argument boils down to an allegation that the claimed inventions relate to computers. But this argument suffers from numerous problems.

First, the claimed inventions are not just relying on generic functions of a generic computer (collecting, sending, and processing data), as was the case in *Bilski*, *Alice*, and other Federal Circuit cases. Instead, the claimed inventions include a combination of software and hardware that did not exist in March 2000. The PTO confirmed this fact after it considered well in excess of 600+ prior art references, and concluded that the claims were novel and non-obvious over that extensive body of prior art.[8] Moreover, if Amazon's argument is taken to the extreme, then all patents including software would become unpatentable—because at some level all computers include the general function of processing an application to perform a function. But courts have resolutely held that software *is* patentable. *See, e.g., Hughes*, 2014 U.S. Dist. LEXIS 156763 at *21 ("[S]oftware must be eligible under § 101.").

---

[8]   While the inventive concept test is not coextensive with novelty, the Supreme Court has has recognized that "in evaluating the significance of additional steps, the § 101 patent eligibility inquiry and, say, the § 102 novelty inquiry might sometimes overlap." *See Mayo*, 132 S. Ct. at 1304. Here, the extensive body of prior art considered by the PTO before issuing the '085 patent is relevant to a determination that an inventive concept exists. Indeed, as § 101 is "only a threshold test," it is difficult—if not impossible—to imagine how a claim that was new and non-obvious over 600 prior art references—including the best prior art numerous companies located to attack Affinity Labs' portfolio—was not at least an "inventive concept" *eligible* to be considered for patent protection. *See also* Almeroth Decl. ¶¶ 12-13.

Finally, any analysis of what was "conventional" must be tied to the relevant time frame—the filing of the priority application. *See*, *e.g.*, *Modern Telecom Sys. LLC v. Juno Online Servs., Inc.*, No. 14-0348, 2015 U.S. Dist. LEXIS 33835, at *22 (C.D. Cal. Mar. 17, 2015) (concluding that "there is no record of the technology described in the patents being well-known at the *time of filing*") (emphasis added). Here, the state of the art in 2000, and the problems associated with distributing and consuming media content, bely any notion that the claim elements in the '085 patent—individually and collectively—were "well-known, conventional, or routine." For instance, even assuming arguendo, as Amazon alleges, that all the claim elements were conventional, the combination of these elements was plainly inventive against the backdrop of limited options for distributing and consuming media in 2000. *See*, *e.g.*, *Hughes*, 2014 U.S. Dist. LEXIS 156763 at *43 ("A combination of conventional elements may be unconventional.").

The inventors of the '085 patent did far more than take the concept of "playing media on a portable device" and "apply it" to a computer. Their specific combination of software and hardware provided users the ability to manage and receive digital media with far more flexibility and control than "analog radio," "portable television," or other options available in March 2000.

**B.** **The claimed inventions of the '085 patent do not preempt the playing of media on a portable device.**

Further proof that the '085 patent claims eligible subject matter is lack of preemption risk. The fundamental policy underlying § 101 is the concern that a patent on an abstract idea will preempt "building blocks of human ingenuity." *See Alice*, 134 S. Ct. at 2354. Indeed, the preemption concern "underlies both steps of the analysis." *Id.* If there is no preemption risk, the Federal Circuit and district courts have held that § 101 challenges must fail. *See*, *e.g.*, *DDR Holdings*, 773 F.3d at 1259 (explaining that "[i]t is also clear that the claims do not attempt to preempt every application of the idea"); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (explaining that "in the case of abstractness, the court

must determine whether the claim poses 'any risk of preempting an abstract idea'").[9] Here, there is no preemption risk. And Amazon has failed in its burden to prove that the '085 patent claims would preempt all use of the alleged abstract idea. In fact, Amazon provides no real analysis of the preemption risk presented by the claims at all.

The claimed inventions of the '085 patent do not preempt all ways of playing media on a portable device. To start with the obvious, it is clear that the claimed inventions do not disproportionally tie-up "the playback of media on a portable electronic device." For example, the claims do not cover any of the prior art systems alluded to in Amazon's briefing: radio and portable television players. Nor do the claims preempt traditional portable DVD players, CD players, traditional MP3 players (including numerous generations of the iPod, which arose after the claimed inventions in this case), or the Walkman, which all either store media locally (i.e., via a download) or play media from a locally-stored medium, like a CD or cassette. The claims do not even claim all modes of receiving streaming media. For instance, the claims do not cover streaming media to a traditional personal computer. In fact, the claims do not even claim all modes of streaming media to mobile devices. For instance, Amazon is free to stream media to a mobile device without the use of an application/collection of instructions that mirrors the user

---

[9]     *See*, *e.g.*, *Ameritox, Ltd. v. Millennium Health, LLC*, No. 13-cv-832-WMC, 2015 U.S. Dist. LEXIS 53818, at *6-7 (W.D. Wisc. Apr. 24, 2015) (finding "defendant failed to offer clear and convincing evidence, in the form of expert testimony or otherwise," to support that asserted patent was preemptive); *Mobile-Plan-IT v. Facebook Inc.*, No. 14-cv-1709-RS, 2015 U.S. Dist. LEXIS 52343, at *11 (N.D. Cal. Apr. 20, 2015) (invention scope is limited to particular issues arising among conference attendees); *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408, at *17 (D. Del. Apr. 15, 2015) (claim contains "meaningful limitations that prevent it from preempting the abstract idea of receiving, translating, and delivering a message" and "is limited to SMS text messages between a mobile device and the Internet"); *Modern Telecom*, 2015 U.S. Dist. LEXIS 33835 at *21 ("Defendants have failed to demonstrate that the specific steps recited in the patents pre-empt all inventions concerning communicating between two modems."); *Trading Techs.*, 2015 U.S. Dist. LEXIS 22039 at *13 (holding that the defendant did not meet its burden of proof for § 101 because the "asserted claims similarly do not preempt every way of" practicing the alleged abstract idea); *Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.*, No. 13-1274-SLR, 2014 U.S. Dist. LEXIS 174725, at *25 (D. Del. Dec. 18, 2014) ("The claims do not preempt all applications of providing customized web pages, as they recite a specific method of customizing web pages based on user data.").

customizations available through a website. There is no risk of preemption as discussed by the Supreme Court, the Federal Circuit, and district courts across the country. Amazon's motion should be denied.

### C.   The '085 patent claims satisfy the machine-or-transformation test.

Amazon again fails to mention—much less apply—the machine-or-transformation test. The machine-or-transformation test "can provide a 'useful clue' in the second step of the *Alice* framework." *Ultramercial*, 772 F.3d at 716 (citations omitted). The test is satisfied if a process (1) is "tied to a particular machine or apparatus," or (2) "transforms a particular article into a different state or thing." *SiRF Tech., Inc.  v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010). "A claimed process involving a fundamental principle that uses a particular machine or apparatus would not pre-empt uses of the principle that do not also use the specified machine or apparatus in the manner claimed." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008) (en banc), *aff'd on other grounds*, 561 U.S.  593 (2010).

For a machine to "impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed." *SiRF Tech.*, 601 F.3d at 1333. The inability of a human alone to perform the claimed invention is one strong indicator that the claims are meaningfully tied to a machine such that they do not pre-empt some fundamental principle or conventional business practice. *See Helios Software LLC v. Spectorsoft Corp.*, No. 12-081-LPS, 2014 U.S. Dist. LEXIS 135379, at *55 (D. Del. Sept. 18, 2014) ("Importantly, both sides concede that none of these limitations could be performed by a human alone."); *see also SiRF Tech*, 601 F.3d at 1333 ("[T]here is no evidence here that the calculations here can be performed entirely in the human mind."). Here, claims 1, 8, and 14 all include software and hardware elements that play a significant part in managing and distributing digital multimedia to mobile devices. The "network based media managing system" is necessary to at least maintain a library of content. *See* Ex. A at 20:7-8. A "network based delivery resource" maintains a list of network locations for multimedia content and streams multimedia content to a

wireless device. *Id.* at 20:19-20. And a specific collection of instructions with specialized capabilities is stored in a "non-transitory storage medium" for execution on a handheld wireless device. *Id.* at 20:10-12.

These three components, combined in the specific manner recited by the claims, are necessary to provide a system for managing and distributing multimedia. Indeed, a human alone could not perform the claimed invention. Moreover, there is no evidence that the network based media managing system, network based delivery resource, and collection of instructions stored in a non-transitory storage medium "function solely as . . . obvious mechanism[s] for permitting a solution to be achieved more quickly." *See SiRF Tech*, 601 F.3d at 1333. Accordingly, the '085 patent claims satisfy the machine-or-transformation test because the scope of the claims are tied to a specific combination of software and hardware components.

### III.  The Defendants' motion is premature because it asks this Court to make factual conclusions about the claimed inventions based only on their attorneys' argument and without a sufficient factual record.

Amazon's Rule 12 motion is premature and incomplete for the following reasons. First, the Federal Circuit has explained "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., LLC v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). "Thus, it seems a definitive ruling on eligibility before claim construction is only warranted in narrow circumstances, making such a ruling the exception rather than the rule." *Certified Measurement, LLC v. Centerpoint Energy Houston Elec. LLC*, No. 14-CV-627-RSP, 2015 U.S. Dist. LEXIS 39821, at *4-5 (E.D. Tex. Mar. 29, 2015). Further, Amazon has not met its burden to show claim construction does not affect the eligibility analysis. *See*, *e.g.*, *Data Distribution Techs., LLC v. Brer Affiliates, Inc.*, No. 12-4878, 2014 U.S. Dist. LEXIS 115543, at *40 (D.N.J. Aug. 19, 2014) (emphasis added) ("At this procedural posture, the Court cannot hold that Defendants have shown by clear and convincing evidence that no plausible construction of the '908 Patent's

claims will satisfy the Alice test for patentability."). Amazon has not met this burden, especially as it concurrently maintains that it does not infringe the claims of the '085 patent, which directly contradicts any concept of preemption. *See* Dkt. 21 at 9.

Second, Amazon has the burden to prove by clear-and-convincing evidence all underlying factual disputes. While § 101 is a question of law, "the legal analysis can – and often does – 'contain underlying factual issues.'" *Certified Measurement*, 2015 U.S. Dist. LEXIS 39821 at *4 (quoting *Accenture*, 728 F.3d at 1340-41). Here, Amazon has offered attorney argument about what was "well-known," "generic," or "conventional." Def. Br. at 5, 12-18. But Amazon is not entitled to resolve factual disputes in its favor as the moving party under Rule 12, especially when fact disputes clearly exist between the parties, as evidenced by Dr. Almeroth's declaration at ¶¶ 12-13 and the PTO's consideration of over 600 prior art references while still finding the claims of the '085 patent new, novel, and non-obvious. *See*, *e.g.*, *Kenexa Brassring, Inc. v. HireAbility.com, LLC*, No. 12-cv-10943, 2015 U.S. Dist. LEXIS 56156, at *19 (D. Mass. Apr. 28, 2015); *Modern Telecom*, 2015 U.S. Dist. LEXIS 33835 at *22.[10] As such, it is improper to resolve the factual disputes in Amazon's favor at the pleading stage.

Finally, Amazon's motion is incomplete in its effort to invalidate all twenty claims in the '085 patent. Amazon's brief ignores the black letter law that each claim in a patent is a separate property right. *See*, *e.g.*, *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984). For this reason, courts have recognized that a defendant fails in its burden of proof on § 101 if the defendant

---

[10]     There are instances in which cases have granted Rule 12 motions on § 101. In *Content Extraction*, the Federal Circuit made clear that the patent owner "conceded at oral argument" that some of the claim elements were "well-known at the time of filing." 776 F.3d at 1348. The Federal Circuit's decisions in *Ultramercial* are far less clear. In *Ultramercial II*, the Federal Circuit recognized the impropriety of addressing the underlying factual issues at the Rule 12 stage. *Ultramercial Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) ("Almost by definition, analyzing whether something was 'conventional' or 'routine' involves analyzing facts. Likewise, any inquiry into the scope of preemption—how much of the field is 'tied up' by the claim—by definition will involve historic facts . . ."), *vacated and remanded*, *WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014). One year later, however, the court—with a different panel—concluded otherwise without stating its foundation for making the factual findings that it did. *See generally Ultramercial*, 772 F.3d at 715-16.

provides a conclusory or superficial analysis of the dependent claims. *See*, *e.g.*, *TriPlay, Inc. v. WhatsApp, Inc.*, No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068, at *18-19 (D. Del. April 28, 2015); *Stoneeagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, No. 13-cv-2240-T-33MAP, 2015 U.S. Dist. LEXIS 15144, at *10 (M.D. Fla. Feb. 9, 2015). The same should result here because Amazon summarily addresses all the dependent claims in less than one page. *See* Def. Br. at 16. It is unfair and improper for Amazon to simply contend all the dependent claims use "generic computing functionality" without a specific analysis. Amazon is also incorrect. All of the dependent claims include limitations that are necessarily rooted in computer technology, which all include inventive concepts that establish § 101 eligibility. By way of example, claims 2 and 18 require a specific application or instructions enabling the wireless device to communicate streaming content to yet another electronic device—such as a car audio system. Claim 15 incorporates variable bit-rate streaming, a technical solution to delivering seamless media over the Internet to a wireless handheld device. And Claim 16 is directed to altering the stream based on the buffer fill of a handheld device, which is similarly a technical solution for delivering seamless digital media.

## Conclusion

The claimed inventions in the '085 patent are tangible and concrete inventions related to the management, distribution, and streaming of media using an application with a customized user interface. They are not abstract, and they do not preempt Amazon's broad proposal of "playing media on a portable device." Amazon's motion to dismiss should be denied because the claimed inventions are patentable subject matter.

20

Dated: May 14, 2015                              Respectfully Submitted,


                                    By:   /s/ John P. Palmer

                                          **Naman Howell Smith & Lee, PLLC**
                                          John P. Palmer (State Bar No. 15430600)
                                          P.O. Box 1470
                                          Waco, TX 76703-1470
                                          Telephone: (254) 755-4100
                                          Facsimile: (254) 754-6331
                                          palmer@namanhowell.com

                                          **Robins Kaplan LLP**
                                          Ronald J. Schutz (MN Bar No. 130849)
                                          Cyrus A. Morton (MN Bar No. 287325)
                                          Patrick M. Arenz (MN Bar No. 386537)
                                          Daniel R. Burgess (MN Bar No. 389976)
                                          Shira T. Shapiro (MN Bar No. 390508)
                                          Kristine A. Tietz (MN Bar No. 393477)

                                          Western District of Texas Members

                                          800 LaSalle Avenue, Suite 2800
                                          Minneapolis, Minnesota 55402
                                          Telephone: (612) 349-8500
                                          Facsimile: (612) 339-4181
                                          RSchutz@robinskaplan.com
                                          CMorton@robinskaplan.com
                                          PArenz@robinskaplan.com
                                          DBurgess@robinskaplan.com
                                          SShapiro@robinskaplan.com
                                          KTietz@robinskaplan.com

                                          **Counsel for Plaintiff**
                                          **Affinity Labs of Texas, LLC**

**Certificate of Service**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document (Affinity Labs' Opposition to Defendants' Motion to Dismiss) via the Court's CM/ECF system on May 14, 2015.

May 14, 2015                                          */s/ John P. Palmer*