FILED

JUN 1 2 2015

CLERK
WESTERN DISTRICT COURT
BY
DISTRICT OF TEXAS
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**WACO DIVISION**

| | | |
|---|---|---|
| **AFFINITY LABS OF TEXAS, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **Case No. 6:15-CV-0029-WSS-JCM** |
| | § | |
| **AMAZON.COM, INC.; AMAZON** | § | |
| **DIGITAL SERVICES, INC.,** | § | |
| *Defendants.* | | |

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE WALTER S. SMITH, JR.,**
  **UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. §

636(b)(1)(c) and Rules 1(h) and 4(b) of Appendix C of the Local Rules of the United States

District Court for the Western District of Texas, Local Rules for the Assignment of Duties to

United States Magistrate Judges.

Before the Court is Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c).

ECF No. 47. The Motion has been fully briefed.[1] For the reasons that follow, the undersigned

**RECOMMENDS** that Defendants' Motion be **GRANTED** with respect to all of the asserted

claims of U.S. Patent No. 8,688,085.

### I. Background

Plaintiff is Affinity Labs of Texas, LLC, ("Affinity"), an innovation consulting firm

founded in 2008 by Russell White and Harlie Frost. Affinity is the owner of a large portfolio of

technology-based patents. Defendants are Amazon.com, Inc. and Amazon Digital Services, Inc.

---

[1] Pl.'s Resp., ECF No. 52; Defs.' Reply, ECF No. 56.

(collectively, "Amazon"). Affinity filed suit against Amazon alleging infringement of Patent No. 8,688,085 ("the '085 Patent").[2] The case was assigned to the undersigned for all purposes. Order Reassigning Case, ECF No. 8.

The '085 Patent claims a means for "wirelessly communicating selective information to an electronic device." '085 Patent col. 2 l. 54-55 (filed Apr. 1, 2013). According to Affinity, the patent addresses the problem of allowing users to "consume media on the go" by using the Internet to stream media. Pl.'s Resp. at 12. The claimed invention allegedly allows a user to: "communicate the selected audio information to a remote electronic device, . . . a home computer, an electronic device coupled to a home network or computer system, etc. or other locations or devices operable to receive the selected audio information." *Id*. col. 14-15 l. 66-4.

There are three independent claims at issue in the '085 Patent: claims 1 and 14 are styled as system claims and claim 8 is a method claim. However, claims 1 and 14 are, in essence, nothing more than method claims. *Accenture Global Servs., GMBH v. Guideware Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (holding system claims that "closely track method claims and are grounded by the same meaningful limitations [] generally rise and fall together").

Claim 14 is representative of the three independent claims and is reproduced below:

14. A media system, comprising:

a network based media managing system that maintains a library of content that a given user has a right to access and a customized user interface page for the given user;

a collection of instructions stored in a non-transitory storage medium and configured for execution by a processor of a handheld wireless device, the collection of instructions operable when executed: (1) to initiate presentation of a

[2] On the same date, Affinity filed four patent infringement suits alleging infringement of U.S. Patent No. 7,970,379, a patent with specifications very similar to those of the '085 patent. *See Affinity Labs of Texas, LLC. v. DirecTV, et al.*, No. 6:15-CV-0030-WSS-JCM (consolidated). Defendants in that case likewise moved to dismiss Affinity's complaints pursuant to 28 U.S.C. § 101. On May 12, 2015, the Court held oral argument on the motion, and on June 2, 2015, the Court entered an order granting Defendants' motion. The opinion in this case tracks *DirecTV* in form and approach.

graphical user interface for the network based media managing system; (2) to facilitate a user selection of content included in the library; and (3) to send a request for a streaming delivery of the content; and

a network based delivery resource maintaining a list of network locations for at least a portion of the content, the network based delivery resource configured to respond to the request by retrieving the portion from an appropriate network location and streaming a representation of the portion to the handheld wireless device.

'085 Patent col. 20 l. 6-24; *see Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming a district court's decision to examine one representative claim per patent "because all the claims are substantially similar and linked to the same abstract idea") (internal quotation marks omitted). Defendants jointly seek to dismiss Affinity's Complaint pursuant to Fed. R. Civ. P. 12(c) on the grounds that the '085 Patent is invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. In June 2014, the Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, a seminal decision in which the Court held that patent claims designed to facilitate the exchange of financial obligations between two parties by using a computer system as a third-party intermediary were drawn to a patent ineligible abstract idea and thus not patent eligible under § 101. 134 S. Ct. 2347 (2014). *Alice* prompted a wave of decisions from lower courts addressing the issue of patent eligibility under § 101.

## II. Relevant Law

Section 101 of the Patent Act defines patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Section 101 also "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134

S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)) (internal quotation marks omitted). "[T]he concern that drives this exclusionary principle [i]s one of pre-emption." *Alice*, 134 S. Ct. at 2354 (citing *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)). These categories are not patent-eligible because "they are the basic tools of scientific and technological work . . . , free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S. Ct. 1289, 1293 (2012) (citations omitted). Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it[,]" thereby thwarting the primary object of the patent laws. *Id.* The Supreme Court has "repeatedly emphasized this . . . concern that patent law not inhibit further discovery by improperly tying up the future use of" these building blocks of human ingenuity. *Id.* at 1301; *see also O'Reilly v. Morse*, 56 U.S. 62 (1853). However, the Court has also recognized the need to "tread carefully in construing this exclusionary principle, lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354. The Supreme Court recognized that, at some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S. Ct. at 1293. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept. *See Diamond v. Diehr*, 450 U.S. 175, 187 (1981). Applications of such concepts "to a new and useful end" remain eligible for patent protection. *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

In *Alice*, the Supreme Court identified a "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1289). This framework reflects the two-part test articulated by the Supreme Court in *Mayo*.

Under the *Mayo/Alice* test, a court must first ask if the claim is "directed to one of those patent-ineligible concepts"—a law of nature, physical phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. If it is, the court moves to the second step. At step two, the court asks "[w]hat else is there in the claims before us?" *Mayo*, 132 S. Ct. at 1297. To answer that question, the court considers the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Id.* at 1298-97. This analysis serves as a search for an " 'inventive concept' "—i.e., an element or combination of elements "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 1294.

### III. Analysis

#### A. Ripeness and Burden of Proof

Affinity argues Defendants' Motion is premature because: (1) claim construction has not occurred yet, Pl.'s Resp. at 18-19; (2) Amazon has not met its burden to prove all underlying factual disputes by clear-and-convincing evidence, *Id.* at 19; and (3) because "Amazon's Motion is incomplete in its effort to invalidate all twenty claims." *Id.* Accordingly, the Court will address the timeliness of Defendants' Motion and the appropriate standard of proof.[3]

Under the Federal Rules "a party may move for judgment on the pleadings" "[a]fter the pleadings are closed—but early enough not to delay a trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The Rule

---

[3] The Court of Appeals for the Federal Circuit looks to regional circuit law for the resolution of procedural issues, such as the standard of review applied to challenges to a dismissal for failure to state a claim under Fed. R. Civ. P. 12(c). *See Content Extraction*, 776 F.3d at 1349 ("We review a district court's dismissal for failure to state a claim under the law of the regional circuit.") (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012)).

12(c) "inquiry focuses on the allegations in the pleadings" and not on whether the "plaintiff actually has sufficient evidence to succeed on the merits." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (citing *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007)) (internal quotations omitted). The "court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)). To avoid dismissal, the pleadings must show "specific facts, not mere conclusory allegations." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The ultimate question for the Court in deciding a Rule 12(c) motion is whether the complaint, when viewed in the light most favorable to the plaintiff, states a valid claim for relief. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

The Federal Circuit has confirmed that determining patent eligibility under § 101 is appropriate at the pleadings stage. "Issues of patent-eligible subject matter are questions of law." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011). *See, e.g.*, *Content Extraction*, 776 F.3d at 1349 (affirming district court's resolution of a motion to dismiss at the pleading stage); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 711 (Fed. Cir. 2014) (*Ultramercial III*) (affirming district court's decision granting motion to dismiss infringement claim for failure to state patent-eligible subject matter); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (affirming district court's decision to grant judgment on the pleadings based on § 101). "[S]ection 101 imposes 'a threshold test,' . . . one that must be satisfied before a court can proceed to consider subordinate validity issues such as non-obviousness under 35 U.S.C. § 103 or adequate written description under 35 U.S.C. § 112."

*Ultramercial III*, 772 F.3d at 718 (Mayer, J., concurring) (citing *Bilski*, 561 U.S. at 602) (internal

citation omitted). "[S]ubject matter eligibility is the primal inquiry, one that must be addressed at

the outset of litigation." *Ultramercial III*, 772 F.3d at 717 (Mayer, J., concurring) (citing *In re*

*Comiskey*, 554 F.3d 967, 973 (Fed. Cir. 2009)). The Federal Circuit's declaration on this point is

rooted in sound policy. Addressing § 101 at the outset of litigation has "a number of salutary

effects": it "conserve[s] scarce judicial resources," "provides a bulwark against vexatious

infringement suits," and protects the public at the outset from "patents that stifle innovation and

transgress the public domain." *Id.* at 719-20.

   Furthermore, in this case the § 101 inquiry is properly addressed prior to claim

construction. "Although the determination of patent eligibility requires a full understanding of

the basic character of the claimed subject matter, claim construction is not an inviolable

prerequisite to a validity determination under § 101." *Content Extraction*, 776 F.3d at 1349

(citing *Ultramercial III*, 772 F.3d at 714–15; *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of*

*Can. (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) (finding that the district court did not err

by declaring claims patent-ineligible at the pleading stage without first construing the claims or

allowing the parties to conduct fact discovery and submit opinions from experts supporting their

claim construction positions)). However, completing claim construction prior to a § 101 analysis

may be appropriate under certain circumstances. *See Bancorp*, 687 F.3d at 1273-74. For

instance, "it will ordinarily be desirable—and often necessary—to resolve claim construction

*disputes* prior to a [§] 101 analysis." *Id.* (emphasis supplied).

   Denying Defendants' 12(c) motion as premature, merely because claim construction has

not occurred, is unwarranted. As Defendants point out, Affinity has not identified a disputed

term requiring construction and has therefore not demonstrated why claim construction is

necessary to determine whether the patent claims patent-eligible subject matter. Defs.' Reply at 9; *see TriPlay v. WhatsAPP Inc.*, No. 13-1703-LPS, 2015 WL 1927696, at *6 (D. Del. Apr. 28, 2015) (citing *Open Text S.A. v. Alfresco Software Ltd*, No. 13-cv-04843-JD, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) ("the parties have not sought construction of any terms . . . and this lack of dispute over the proper construction of the asserted claims confirms that it is unnecessary to engage in claim construction before addressing validity under [§] 101"). Furthermore, as discussed herein, the asserted claims are drawn to an abstract idea and there is no reasonable construction of any term that would serve to bring the claims within the ambit of patentable subject matter. Accordingly, this Court's § 101 analysis is appropriate at the pleadings stage.

Affinity argues factual disputes exist regarding what is "'well-known,' 'generic,' or 'conventional'" and cannot be resolved under Rule 12. Pl.'s Resp. at 19. However, the Supreme Court has resolved § 101 patent validity by examining the face of the patent. *Bilski*, 561 U.S. at 622, 626; *Alice*, 134 S. Ct. at 2350, 2356; *see also OIP Techs. Inc., v. Amazon.com, Inc.*, No. 2012-1696, 2015 WL 3622181, at *4 (Fed. Cir. 2015) (finding, at the pleadings stage, that the processes of "'present[ing] [offers] to potential customers' and 'gathering … statistics generated during said testing about how the potential customers responded to the offers' are 'well-understood, routine, conventional data-gathering activities that do not make the claims patent eligible") (citations omitted). Thus, the Court only needs to view the patent itself. *See Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *6, *17 (C.D. Cal. Oct. 28, 2014) ("[T]he Court finds that the basic character of the claimed subject matter is readily ascertainable from the face of the patent") (internal citation omitted); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 817 (E.D. Va. 2014) ("a court must evaluate the

claims [o]n their face to determine to which concept the claims are drawn" (citing *Alice*, 134 S. Ct. at 2356)) (internal citation omitted). Therefore, the Court can resolve validity of the '085 Patent on its face at the pleadings stage.

Regarding burden of proof, there is no clear mandate from the Supreme Court or the Federal Circuit, and lower courts are split as to whether the clear and convincing evidentiary standard should be applied in a challenge to a patent's eligibility under § 101.[4] Section 101 involves a legal analysis as to whether the basic character of the claimed subject matter is patent ineligible and thus largely implicates questions of law. Accordingly, to the extent legal questions bear on the ultimate question of subject matter eligibility, the Court will decide those questions as a matter of law.[5] Although the issue of invalidity under § 101 presents a question of law, the

---

[4] *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) *(Ultramercial II), vacated sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014) ("the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility"); *TriPlay*, 2015 WL 1927696, at *5 ("even assuming that the 'clear and convincing' evidence standard is applicable to [§] 101 challenges, it would apply only to the resolution of factual disputes, not to the resolution of pure issues of law") (citing *Microsoft Corp. v. i4i Ltd P'ship*, 131 S. Ct. 2238, 2242-43 (2011) (footnote omitted)); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2015 WL 774655, at *3 (N.D. Ill. Feb. 24, 2015) ("until the Federal Circuit or the United [States] Supreme Court mandates otherwise, CQG must show by clear and convincing evidence that the patents-in-suit claim patent-ineligible subject matter."); *Bascom Research, LLC v. LinkedIn, Inc.*, No. 12-CV-06293-SI, 2015 WL 149480, at *4 (N.D. Cal. Jan. 5, 2015) ("an alleged infringer asserting an invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing evidence"); *Enfish, LLC, v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1170 (C.D. Cal. 2014) ("Federal Circuit precedent requires courts to apply the [clear and convincing evidence] standard to § 101 challenges") (citing *Ultramercial II*, 722 F.3d at 1339; *cf. Content Extraction*, 776 F.3d at 1345-49 (in which the Federal Circuit affirmed a dismissal under § 101 at the Rule 12(b)(6) stage without discussion of any disputed issues of fact); *Ultramercial III*, 772 F.3d at 720–21 (Mayer, J., concurring) ("Although the Supreme Court has taken up several [§] 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility. The reasonable inference, therefore, is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the [§] 101 calculus.") (internal citation omitted); *Shortridge v. Found. Constr. Payroll Servs., LLC*, No. 14–cv–04850–JCS, 2015 WL 1739256, at *7 (N.D. Cal. Apr. 14, 2015) ("Although the clear and convincing evidence standard is not applicable to the Motion, Defendants, as the parties moving for relief, still bear the burden of establishing that the claims are patent[-]ineligible under § 101."); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 14–7004; 14–7006(JLL), 2015 WL 1810378, at *6 (D.N.J. Apr. 20, 2015) ("With no authoritative law binding the Court as to an applicable standard, the Court adopts Judge Mayer's approach and will not afford Plaintiff's Patents the presumption of subject matter eligibility."); *Modern Telecom Sys. LLC, v. Earthlink, Inc.*, No. SA CV 14-0347-DOC, 2015 WL 1239992, at *7 (C.D. Cal. Mar. 17, 2015) ("Because, ordinarily, no evidence outside the pleadings is considered in resolving a motion to dismiss or a motion for judgment on the pleadings, it makes little sense to apply a 'clear and convincing evidence' standard-a burden of proof-to such motions.") (emphasis removed); *Open TV, Inc. v. Apple, Inc.*, No. 14–cv–01622–HSG, 2015 WL 1535328, at *3 (N.D. Cal. Apr. 6, 2015) (rejecting the clear and convincing evidence standard and applying the Rule 12(b)(6) standard).

[5] It is within this Court's province to make findings when deciding the legal question of whether the basic character of the claimed subject matter is patent ineligible. "Courts frequently make findings when deciding purely legal questions. Eligibility questions mostly involve general historical observations, the sort of findings routinely made by courts deciding legal questions." *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13–cv–07245–MRP–JEM, 2014 WL 5661290, at *20 n.6 (C.D. Cal. Nov. 3, 2014) (citations omitted).

Court recognizes that a legal conclusion "may contain underlying factual issues." *See Accenture Global*, 728 F.3d at 1340–41; *Ultramercial II*, 722 F.3d at 1339 ("[T]he analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues."). To the extent that questions of fact exist, the Court will apply the clear and convincing evidence standard.[6]

Finally, Affinity contends that Amazon is unable to invalidate all twenty claims of the '085 Patent because Amazon provides a conclusory analysis of the dependent claims. Pl.'s Resp. at 19-20. However, Amazon is not required to analyze each dependent claim when the dependent claim recites little more than the same abstract idea found in the independent claim. *See Content Extraction*, 776 F.3d at 1348 (finding 242 claims invalid based on analysis of just one independent claim, where the dependent claims "recite[d] little more than the same abstract idea"). The validity of the dependent claims are addressed in Section (C)(2) of this opinion.

**B.** *Mayo/Alice* **Step 1: Are the claims of the '085 patent directed to an abstract idea**

The Court must first evaluate the patent claims "[o]n their face" and determine whether the claims are directed to patent-ineligible subject matter—"laws of nature, natural phenomena, and abstract ideas." *Alice*, 134 S. Ct. at 2355-56. The instant case only presents the question of whether Plaintiff's patent is directed to an abstract idea.

---

[6] By separate motion, Amazon requests the Court strike and disregard the Declaration of Professor Kevin C. Almeroth ("Almeroth Declaration") (ECF No. 52-1) submitted by Affinity in support of its opposition to Amazon's Motion for Judgment on the Pleadings. Defs.' Mot. to Strike (ECF No. 57). "When 'matters outside the pleadings' are submitted in support of or in opposition to a Rule 12(b)(6) motion to dismiss, Rule 12(b) grants courts discretion to accept and consider those materials, but does not require them to do so." *See ACE Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188 (S.D. Tex. 2008) (citations omitted); *see also* Fed. R. Civ. P (12)(d). The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). The Court declines to accept the Almeroth Declaration and convert Amazon's § 101 Motion into a summary judgment motion under Rule 56. Although the Court recognizes that the legal analysis under § 101 can contain underlying factual issues, in the instant case, the Court is of the opinion that no factual issues are present, and the Court has adequately resolved the threshold matter of patent eligibility by examining the patent on its face, without considering materials outside of the pleadings. *See OIP Techs.*, 2015 WL 3622181, at *4 ("Accordingly, where, as here, asserted claims are plainly directed to a patent ineligible abstract idea, we have repeatedly sanctioned a district court's decision to dispose of them on the pleadings.") (Mayer, J., concurring) (citations omitted). Accordingly, Amazon's Motion to Strike the Declaration of Dr. Kevin C. Almeroth (ECF No. 57) is granted and the Court will disregard the Almeroth Declaration.

The Supreme Court and lower courts have provided some important principles to direct courts in evaluating whether an idea is abstract. At step one, "the court must identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract."[7] *Enfish*, 56 F. Supp. 3d at 1173. "Application of the first *Mayo* step does not include a detailed examination of the asserted claims, either individually or as an ordered combination; that analysis is properly lodged within step two." *Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, No. 12–10943–FDS, 2015 WL 1943826, at *5 (D. Mass. Apr. 28, 2015) (citing *Alice*, 134 S.Ct. at 2356; *Mayo*, 132 S.Ct. at 1297). Instead, courts should recite a claim's purpose at a reasonably high level of generality. *Enfish*, 56 F. Supp. 3d at 1174; *Cal. Inst. of Tech.*, 2014 WL 5661290, at *13. Step one is a "quick look" test, the purpose of which is to identify a risk of preemption and ineligibility. *Enfish*, 56 F. Supp. 3d at 1173. If a claim's purpose is abstract, the court looks with more care at the specific claim elements in step two. *Id.* at 1174; *Cal. Inst. of Tech.*, 2014 WL 5661290, at *13. All of the claim limitations need not be abstract. The patent may not pass § 101 muster if "the concept embodied by the majority of the limitations" describes an abstract idea. *See Ultramercial III*, 772 F.3d at 715 (holding that "[a]lthough certain additional limitations, such as consulting an activity log, add a degree of particularity, *the concept embodied by the majority of the limitations* describes only the abstract idea of showing an advertisement before delivering free content") (emphasis added).

Amazon suggests the '085 patent's purpose is simply "playing media (e.g., audio or video) on a portable device." Defs.' Mot. at 9. Affinity, for its part, argues that Amazon's

---

[7] The Supreme Court took this approach in *Alice* (concluding that the steps embodied in the claims were meant to achieve the purpose of mitigating settlement risk); in *Bilski* (characterizing the claims in terms of the invention's purpose—hedging risk); and in *Mayo* (characterizing the claims in terms of the invention's purpose, which was applying a natural law). The Federal Circuit has followed suit: *Content Extraction*, 776 F.3d at 1347 ("data collection, recognition, and storage"); *Ultramercial III*, 772 F.3d at 714 (holding that "the abstract idea at the heart of" the patent-in-suit was "that one can use [an] advertisement as an exchange for currency"); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 ("managing a game of Bingo"); and *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("categorical data storage"); *OIP Techs.*, 2015 WL 3622181, at *3 ("offer-based price optimization").

proposed purpose is overly broad and untethered to the claim language because it ignores the "network-based media system," the fundamental nature of media streaming and distribution embodied in the claims, and the customized user interface—all of which are integral claim elements. Pl.'s Resp. at 4-5. While Affinity maintains the claimed invention cannot be reduced to an essential purpose, Affinity insists the independent claims address at least "a media management and distribution system for distributing and streaming media in connection with an application for execution on a wireless handheld device that includes a customized user interface." *Id.* at 6 (citing Ex. A).

Ultimately, the purpose is neither as broad nor as narrow as the parties suggest. The Court finds the purpose of the '085 Patent is delivering selectable media content and subsequently playing the selected content on a portable device. In reviewing the system and method claims, the Court notes this idea is embodied by all of the limitations in claim 1, claim 8, and claim 14. System claim 1 embodies the same abstract idea as representative claim 14, only it adds login, browse, and listen features. Claim 8, the method claim, likewise embodies the same abstract idea, only it adds a login feature.

Next, the Court examines whether the purpose is abstract. *See Enfish*, 56 F. Supp. 3d at 1174. The Supreme Court did not "delimit the precise contours of the 'abstract ideas' category" in *Alice*—instead, it left the lower courts to develop the category on a case-by-case basis. 134 S. Ct. at 2357. Nevertheless, over the course of several cases, the Supreme Court has identified several categories of precluded subject matter. For example, mathematical algorithms, including

those executed on a generic computer, are patent-ineligible.[8] Similarly, certain scientific principles are patent-ineligible. *See Mayo*, 132 S. Ct. at 1293 (finding that a claim describing relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a drug will cause harm set forth laws of nature). Additionally, some fundamental economic and conventional business practices are also abstract ideas. *See Bilski*, 561 U.S. at 609 (finding the "fundamental economic practice" of hedging to be patent ineligible); *Alice*, 134 S. Ct. at 2356 (finding that a "method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement" was a method of "organizing human activity" and therefore abstract).

Since *Alice*, the Federal Circuit has issued eight decisions interpreting § 101. This body of case law has further defined the contours of the abstract ideas category.[9] In addition, recent

---

[8] *See Benson*, 409 U.S. at 71-72 (finding a claim for a method of converting binary-coded decimal numerals into pure binary numerals using a mathematical formula in a general-use computer was a claim on an idea); *Parker v. Flook*, 437 U.S. 584, 586 (1978) (finding a claim for a method of computing an alarm limit in the catalytic conversion of hydrocarbons using a mathematical algorithm included a law of nature); *Diehr*, 450 U.S. at 178 (finding that a process for curing rubber involving use of a mathematic equation encompassed a law of nature).

[9] The Federal Circuit invalidated a patent that claimed the business method of using "an advertisement as an exchange for currency" (*Ultramercial III*, 772 F.3d at 714); a patent directed to another business method that was "a well-known, and widely understood concept—a third party guarantee of a sales transaction—and then applied that concept using conventional computer technology and the Internet" (*buySAFE*, 765 F.3d at 1352 (Fed. Cir. 2014)); a patent directed to a well-known practice in the banking industry of storing and collecting data, a function that "humans have always performed," especially in the banking industry (*Content Extraction*, 776 F.3d at 1347); a patent that managed "a bingo game while allowing a player to repeatedly play the sets of numbers in multiple sessions" because the idea "consists solely of mental steps which can be carried out by a human using pen and paper" (*Planet Bingo*, 576 F. App'x at 1007); a claim describing the process of taking two data sets and combining them into a single data set known as a "device profile" recited the "abstract process of gathering and combining data that does not require input from a physical device" (*Digitech Image Techs., LLC v. Elec. For Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014)); patent claims directed to identifying alterations of a gene by comparing the patient's gene with a "wild-type" gene and identifying inconsistencies arising therefrom (*In re BRCA1- and BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755 (Fed. Cir. 2014)); and a claim describing "the fundamental economic concept of offer-based price optimization through the use of generic computer functions" (*OIP Techs.*, 2015 WL 3622181, at *3. However, in *DDR Holdings v. Hotels.com, L.P.*, the Federal Circuit found that patents directed to systems and methods of generating a composite web page that combines certain visual elements of a "host" website with content of a third-party merchant were patent-eligible. 773 F.3d 1245, 1259 (Fed. Cir. 2014).

district court opinions post-*Alice*, including a decision from within this District, have found abstract ideas embodied in claims describing a wide variety of systems and processes.[10]

Amazon first argues the '085 Patent is abstract because it is "directed to the 'longstanding' practice of playing media (e.g., audio or video) on a portable device." Defs.' Mot. at 9. According to Amazon, transmitting "information for purposes of playing audio or video on a portable device[,]" is "an antiquated idea that pre-dates the patent." *Id.* (citing '085 Patent col. 2 l. 53-55).

According to Affinity, Supreme Court and Federal Circuit case law permits invalidating patents for abstractness only if they fall into "one of two categories: (1) mathematical algorithms, or (2) business methods involving fundamental economic practices." Pl.'s Resp. at 9. Affinity argues the '085 patent's claims are not directed to either of these limited categories. *Id.* Affinity further argues neither the Supreme Court nor the Federal Circuit has identified "longstanding practices" as an abstract category in and of itself and broadening the limited category of exceptions to include such practices risks swallowing all of patent law. *Id.* at 10. Moreover, Affinity argues, playing media on a portable device is not a longstanding commercial practice. *Id.* at 11.

Contrary to Affinity's position, the Supreme Court did not "delimit the precise contours of the 'abstract ideas' category" in *Alice* and instead left the lower courts to develop the category on a case-by-case basis. 134 S. Ct. at 2357. Affinity's interpretation of the law is overly narrow, and the distinction Affinity attempts to make between "business methods involving fundamental economic practices" and "longstanding practices" boils down to semantics. Affinity ignores the

---

[10] *See Morales v. Square, Inc.*, No. 5:13-CV-1092-DAE, 2014 WL 7396568, at *5 (W.D. Tex. Dec. 30, 2014) (cataloging cases); *see id.* at *6 ("The Federal Circuit's decision in *Digitech Image Techs., LLC v. Elec. For Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014), however, indicates that the abstract ideas category is broad.").

Supreme Court, Federal Circuit, and district court decisions that have recognized those fundamental economic or longstanding commercial practices as abstract ideas ineligible for patent protection under § 101.[11]

The Court finds that delivering selectable media content and subsequently playing the selected content on a portable device is a longstanding commercial practice and is therefore abstract.[12] The Court notes that the first transistor radio, which delivers selectable audio media to a portable device, was developed in the late 1940s and was immensely popular in the succeeding decades. Similarly, the first portable televisions, another form of delivering "selectable" media content to a portable device, were introduced in the 1980s and 1990s. The above examples represent just a few of the many general historical observations that come to mind as evidence of the long-standing commercial practice of delivering selectable media content and subsequently playing the selected content on a portable device.

Second, Amazon alleges the patent is abstract because it has "no particular concrete or tangible form." *Ultramercial III*, 772 F.3d at 715 (holding that an idea is abstract when it has "no particular concrete or tangible form," and is "devoid of a concrete or tangible application."). Amazon argues that the claims are written functionally and without specific guidance about the technology used to implement them. *See* Defs.' Mot. at 9.

---

[11] *See, e.g., Alice*, 134 S. Ct. at 2356 ("hedging is a longstanding commercial practice"); *See Bilski*, 130 S. Ct. at 3231 (finding the "fundamental economic practice" of hedging to be patent ineligible); *DDR*, 773 F.3d at 1257 (during step one of the Alice test the Federal Circuit found the claims did not "recite a fundamental economic or longstanding commercial practice"); *In re TLI Commc'ns LLC Patent Litig.*, No. 1:14md2534, 2015 WL 627858, at \*6 (E.D. Va. Feb. 6, 2015) ("An abstract idea need not be a "preexisting, fundamental truth" and can instead merely be a "longstanding commercial practice") (quoting *Alice*, 134 S. Ct. at 2356)); *Morales*, 2014 WL 7396568, at \*14-16 ("a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice).

[12] It is within this Court's province to make this finding. The Court notes that "[e]ligibility questions mostly involve general historical observations, the sort of findings routinely made by courts deciding legal questions." *See Cal Inst. of Tech.*, 2014 WL 5661290. at \*2, n.6. The Federal Circuit decided a number of post-Alice Rule 12 cases while making general historical observations in determining whether an abstract idea is well-known and longstanding. *See, e.g., buySAFE*, 765 F.3d at 1354-55; *Ultramercial III*, 772 F.3d at 722-23 (Mayer, J., concurring); *Content Extraction*, 776 F.3d at 1347.

In its briefing, Affinity attempts to distinguish the '085 Patent's claims from the claims held to be abstract in *Ultramercial III*, 772 F.3d at 715 (finding that the claimed invention was directed to the abstract business method of "using advertising as an exchange for currency") and *Morsa v. Facebook, Inc.*, No. SACV 14-161-JLA (JPRx), 2014 WL 7641155, at *6 (C.D. Cal. Dec. 23, 2014) (finding claims abstract because they were directed towards "targeting advertisements to certain consumers" and "using a bidding system to determine when and how advertisements will be displayed."). According to Affinity, the '085 Patent's claims are inherently concrete and tangible because, unlike the claims in *Ultramercial III* and *Morsa*, which were "independent of any concrete or tangible form," the '085 patent's claims involve concrete and tangible elements such as computers, portable devices, and a mobile interface. Pl.'s Resp. at 7.

The process of selecting media, receiving that media, and subsequently playing that media describes an abstract idea, devoid of a concrete or tangible application. As Affinity points out, claim 14 does reference certain seemingly concrete elements such as a "customized user interface," a "network-based media management system" and a "handheld wireless device." '085 Patent col. 20 l. 9, 7, 12.[13] However, the inclusion of "some concrete claim elements—even elements associated with computer- or Internet-based technology—is insufficient to indicate that the claims as a whole are not directed to an abstract idea, if those elements are well overtaken in the claim by the articulation of the abstract idea itself." *TriPlay, Inc. v. WhatsApp Inc.*, 2015 WL 1927696, at *11 (citing *Ultramercial III*, 772 F.3d at 715-16). And although Affinity attempts to distinguish *Ultramercial III*, the claims of the '085 patent are in fact analogous to the abstract

---

[13] Similarly, claim 8 references a "network based media managing system," "a customized website interface," "an electronic device" ('085 Patent col. 19 l. 23-24, 25, 30-31), and claim 1 references a "media managing system" and a "wireless handheld device." *Id.* at col. 18 l. 24, 42.

claims in *Ultramercial III*. In *Ultramercial III*, the Federal Circuit held the process claimed in the '545 patent was abstract and the addition of "non-routine components to the claimed idea[,]" such as applying the idea to the Internet, does not "necessarily turn[] an abstraction into something concrete." 772 F.3d at 715. Here, too, the inclusion of "tangible" components does nothing to transform the naked concept into something concrete.[14]

Affinity further attempts to support its position by arguing that the claims cannot "be performed in the human mind, or by a human using a pen and paper." Pl.'s Resp. at 8 (citing *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) (internal quotations omitted)). However, Amazon never asserted the claims can be performed by the human mind alone or with a pen and paper. Defs.' Reply at 2. Further, the mental-steps approach is not dispositive and is only one test to determine if a claim is directed to an abstract idea. *See Alice*, 134 S. Ct. 2356-57 (finding a claim to be abstract that required a computer because it was a fundamental economic practice).

Having found the purpose of the '085 Patent—delivering selectable media content and subsequently playing the selected content on a portable device—is a well-known and longstanding commercial practice, devoid of any tangible or concrete application, the Court finds as a matter of law that the claims of the '085 Patent are directed to an abstract idea. Because the Court finds the Plaintiff's claims are drawn to an abstract idea, the Court will move to the second

---

[14] Affinity relies on *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, supporting the position that the '085 patent's customized user interface is tangible. No. PWG-14-111, 2015 U.S. Dist. LEXIS 62601 (D. Md. May 12, 2015). But in that case the claimed apparatus actually solved a problem in user interface design by enabling the "manipulation of XML documents by a user not familiar with XML by handling the edits and changes via the use of the PRTs and MRTs." *Id.* at 28. The claims in *Intellectual Ventures*, including the user interface, did not describe a highly general concept. Instead, the claimed invention provided a specific solution to a niche problem and described detailed functions and directions for implementing the technology. In contrast, the '085 Patent does not detail the form the user interface takes or how it is implemented. It describes generic technology performing its basic functionality. Further, other courts have found a "user interface" did not save the claims from abstractness. *See e.g., DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 288 (S.D.N.Y. 2014) *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015*); Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-00089, 2015 WL 993392, at *2, *6 (E.D. Tex. Mar. 3, 2015); *MyMedicalRecords, Inc. v. Walgreen Co.*, No. 2:13-cv-00631-ODW (SHx), 2014 WL 7339201, at *3 (C.D. Cal. Dec. 23, 2014).

step of the analysis: determining whether the claims include an inventive concept " 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.' " *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).

**C.  *Mayo/Alice* step 2:  Do the claims contain an "inventive concept"?**

### 1.  Analysis of representative claim 1

The United States Supreme Court has held that if an abstract idea is found, then at step two of the analysis the Court is to:

> examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application.  A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' *Mayo* made clear that transformation into a patent-eligible application requires 'more than simply stat[ing] the [abstract idea] while adding the words apply it.

*Id.* at 2357 (internal citations omitted). Further, the Court is to consider claim elements both individually and as an ordered combination. *Id.* at 2355. The "additional features must be more than well-understood, routine, conventional activity." *Ultramercial III*, 772 F.3d at 715 (citing *Mayo*, 132 S. Ct. at 1298) (internal quotations omitted). *Alice* also held that the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." 134 S. Ct. at 2358. The Supreme Court held that "[s]tating an abstract idea while adding the words 'apply it with a computer' " amounts to a "mere instruction to 'implemen[t]' an abstract idea 'on a computer'" and "cannot impart patent eligibility." *Id.*

In its brief, Affinity contends the '085 Patent satisfies the "machine or transformation" ("MOT") test, which is a "useful clue" in the second step of the *Alice* analysis. Pl.'s Resp. at 17. Under the "machine or transformation" test, a claimed process can be patent eligible if: 1) it is tied to a particular machine or apparatus; or 2) it transforms a particular article into a different state or thing. *See Bilski*, 561 U.S. at 603. Affinity only discusses the first prong of the "machine

18

or transformation" test with respect to the '085 Patent. Pl.'s Resp. at 17-18. Accordingly, the Court will only apply prong one.

The Court notes that a general purpose computer, coupled with the internet, has been found to be a "ubiquitous information-transmitting medium, not a novel machine," thus failing the machine test. *Ultramercial III*, 772 F.3d at 716-17. Affinity counters that the '085 Patent provides more than a general purpose computer because the claims reference "software and hardware elements that play a significant part in managing and distributing digital multimedia to mobile devices[,]" including a "network based media managing system," "network based delivery resource," and collection of instructions "stored in a 'non-transitory storage medium.'" Pl.'s Resp. at 17-18. Further, Affinity contends the claim steps cannot be performed by a human alone, supporting its position that the claims pass the "machine or transformation" test. *Id.* at 17.

In reviewing representative claim 14, the Court finds it fails the "machine or transformation" test. Specifically, in analyzing claim 14, Affinity merely takes the abstract idea mentioned above and applies it to the Internet and a generic, electronic device—in this case, a wireless handheld device operating as a "ubiquitous information-transmitting medium, not a novel machine." *Ultramercial III*, 772 F.3d at 716-17. Although Affinity alleges the components in Claim 14 are specialized, the Court finds the claim merely sets forth routine and generic processing and storing capabilities of computers generally. The claim described a "network based media managing system," in other words a generic database, with a "non-transitory storage medium"—which could be any kind of memory. '085 Patent col. 20 l. 7, 10. The claim further describes a "network based delivery resource," which is merely a network that sends and receives data [media content] in a streaming form. *Id.* at 19; *see e.g.*, *buySAFE*, 765 F.3d at 1355 (finding that "sending" and "receiving" data over a network is "not even arguably inventive");

*Ultramercial III*, 772 F.3d at 717 ("transfer of content between computers is merely what they do"); *Wolf*, 2014 WL 7639820, at *12 (holding a "computer network server" to be a generic piece of technology).

Affinity contends "the customized user interface in the claimed inventions by itself is an inventive concept." Pl.'s Resp. at 13. Affinity claims the customized user interface is "integral— and indeed, essential—to the management, selection, and access to streaming media." *Id.* at 13-14. Affinity also argues the "claimed inventions of the '085 patent [were not] well-known, conventional, or routine as of March 2000." *Id.* at 14. The Court notes that, under recent Federal Circuit and district court case law, to determine whether something is an inventive concept, a court must look to see if the patent adds something to the abstract idea that is an "integral" or "significant part" of the invention. *Bancorp*, 687 F.3d at 1278; *TLI Commc'ns*, 2015 WL 627858, at *29 n.34. In other words, and as stated by the Supreme Court in *Mayo*, "[w]hat else is there in the claims before us?" *Mayo*, 132 S. Ct. at 1297. In the instant case, there is nothing sufficient to transform the patent into a patent-eligible invention.

In *Alice*, the Supreme Court set out a "technological arts"[15] test, finding that the asserted method and system claims: 1) do not "purport to improve the functioning of the computer itself," 2) "nor do they effect an improvement in any other technology or technical field." *Alice*, 134 S. Ct. at 2359. In order to satisfy the technological arts test, claims must "not only [1)] describe a technological objective, but [2)] set out a precise set of instructions for achieving it." *Ultramercial III*, 772 F.3d at 721-22 (Mayer, J., concurring). In determining whether a claim presents an inventive concept, the Federal Circuit and post-*Alice* district courts have examined whether the inventive concept has a "specific functionality" or explains the "how" as to the

---

[15] *See Ultramercial III*, 772 F.3d at 721 (Mayer, J., concurring).

manner in which the inventive concept performs. *See id.*; *see also TriPlay*, 2015 WL 1927696, at

*15; *TLI Commc'ns*, 2015 WL 627858, at *19-20. In *TLI*, the Eastern District of Virginia, in

examining whether the claimed limitation was an inventive concept, found the Federal Circuit's

decision in *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) instructive, wherein the

circuit court noted:

> Although the district court construed 'computer aided' as a limitation, the '427
> patent does not specify how the computer hardware and database are specially
> programmed to perform the steps claimed in the patent . . . The claims are silent
> as to *how* a computer aids the method, the *extent* to which a computer aids the
> method, or the *significance* of a computer to the performance of the method. The
> undefined phrase 'computer aided' is no less abstract than the idea of a
> clearinghouse itself.

*Id.* at *18. (citing *Dealertrack*, 674 F.3d at 1333) (emphasis added). In the instant case, the claim

limitations of Affinity's '085 Patent, specifically the customized user interface, do not identify

any specific functionality or explain "how" this customization is to be achieved. On its face,

claim 14 merely enables the device to present a "graphical user interface for the network based

media managing system." '085 Patent col. 20 l. 13-14. The claim is devoid of any specific

technology or instructions that explain how the device can do what it purports to do or direct the

practitioner how to carry out the claims. This is a generic computer component that does not

contain an inventive concept. *See Cloud Satchel v. Amazon.com, Inc.*, No. 13–941–SLR, 2014

WL 7227942 (D. Del. Dec. 18, 2014). In *Cloud Satchel*, the limitations present in the dependent

claims included a "display unit and a graphical user interface." *Id.* at 12 n.9. The defendants

contended that such limitations merely recited "generic computer components" or "token

postsolution components." *Id.* In finding the patent invalid, the District of Delaware concluded

that "the claimed computers and hardware elements of the claimed subsystem are generic." *Id.* at

8. Likewise, this Court finds that the "graphical user interface" is a generic computer component.

As a final point on "customized" or "graphical user interfaces," the Court finds the *Trading Techs.* decision provides a useful distinction. In *Trading Techs.*, the Northern District of Illinois determined that graphical user interfaces designed to display a "static price axis" for commodities trading "recite[d] an invention that is not merely the routine or conventional use of computers or the Internet," but rather "eliminated some problems of prior GUIs relating to speed, accuracy and usability." 2015 WL 774655, at *5 (internal quotations omitted). First, the undersigned notes the Northern District of Illinois initially stated that "the recitation of a GUI in the claims of the patents in suit does not automatically impart patent eligibility." *Id.* Rather, the district court found that the "claims are directed to a *technological improvement* of GUIs." *Id.* (emphasis supplied). As such, *Trading Techs.* is distinguishable because unlike in the instant case, the claims of the patent in the case examined by the Northern District of Illinois explained the "how" and "specific functionality" of the graphical user interface resulting in a technological improvement. As explained above, the claims of the '085 Patent present the customized/graphical user interface as merely a generic computer component.

Finally, Affinity finds its patent claims analogous to the claims in *DDR Holdings*. Pl.'s Resp. at 12. Affinity contends, as in *DDR Holdings*, "the claims of the '085 patent addressed a technological problem with a technological solution." *Id.* Prior to Affinity's alleged invention, "a user interested in media content" was generally limited "to a wired connection." *Id.* Affinity contends the '085 Patent "overcame [this] challenge[] through a media management and distribution system that allows streaming a rich collection of media to a user, so that the user can access and play that media on a mobile device." *Id.* at 13. However, unlike the patent in *DDR Holdings*, the claims here do not address a "challenge particular to the internet" nor did the claims solve a problem "specifically arising in the realm of computer networks." 773 F.3d at

1257. Further, the claims in *DDR Holdings* passed the second step of *Alice* because they detailed "how interactions with the internet are manipulated to yield a desired result" and a specific way to do so. *Id.* at 1258-60. In the instant case, the claims of the '085 Patent do not explain *how* streaming is accomplished, *how* interface customization is enabled, or *how* to implement the claimed media management system.

Therefore, the Court finds as a matter of law that claim 14, the representative claim of the '085 Patent, does not contain an inventive concept that would add something to the abstract idea that is an "integral" or "significant part" of the invention. Since claim 14 is representative of claims 1 and 8, those claims are likewise abstract and contain no inventive concept. The Court will now review the dependent claims to determine if they add an inventive concept to the independent claims.

### 2. Analysis of dependent claims

The dependent claims of the '085 Patent consist of claims 2-7 and 15-20 of the system claims and 9-13 of the method claims. Defendants allege the dependent claims of the '085 Patent add only trivial limitations insufficient to confer patentability. The Court agrees.

The other asserted claims add little to the substance of claims 1, 8, and 14. To escape invalidity, the dependent claims of the '085 Patent must "offer[] a meaningful limitation" over the abstract idea claimed by the independent claims. *Alice*, 134 S. Ct. at 2360. Claims 6, 7, 9, 10, and 15 recite generic network systems that stream or deliver audio or video content using generic computing functions and only limit the claims to a particular technological environment. *buySAFE*, 765 F.3d at 1355 (generic computing functionality adds nothing inventive to the abstract idea); *Alice*, 134 S. Ct. at 2358 ("patenting abstract ideas cannot be circumvented" by "generic computer implementation" or "by attempting to limit the use of [the idea] to a particular

23

technological environment"). Likewise, claims 2, 12, and 13 merely apply the abstract idea to a wireless device with a conventional display or a generic software application. Other courts have held these types of claims do not add an inventive concept,[16] as the claims solely detail general-purpose computing equipment or functionalities, none which is particularized in the claims.

Claims 3, 4, and 11 merely recite music and text media content. *See Ultramercial III*, 772 F.3d at 712 (finding no inventive concept in the patent where one of the claims included receiving "media products . . . being comprised of at least one of text data, music data, and video data"). Claim 5 recites "targeted advertising," which predates the patent with activities such as: targeted commercial advertisements for particular goods on certain types of broadcasts. *Morsa*, 2014 WL 7641155, at *6, *9 (holding a patent for targeted advertising to be an abstract idea and did not contain an inventive concept). Claim 16 describes buffering while delivering content, which is just manipulation of data flow and is not inventive. *See CyberSource*, 654 F.3d at 1375 ("[t]he mere manipulation or reorganization of data" is not an inventive concept). Last, claims 17, 18, 19, and 20 recite how users access the content: by browsing, requesting, and acquiring the right to access content.[17] Affinity summarily attempts to defend dependent claims 2, 15, 16, and 18. Affinity alleges the claims contain limitations "rooted in computer technology, which all include inventive concepts." Pl.'s Resp. at 20. According to Affinity, claims 2 and 18 enabled "the wireless device to communicate streaming content to yet another device." *Id.* However, as

---

[16] *See Wolf*, 2014 WL 7639820, at *12 (holding a "computer network server" to be a generic piece of technology); *Alice*, 134 S. Ct. at 2358 ("generic computer implementation" does not supply the necessary inventive concept); *Bilski*, 561 U.S. at 610-11 ("patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment") (internal quotations omitted); *buySAFE*, 765 F.3d at 1355 (generic computer functionality, including "receiv[ing] and send[ing] the information over network—with no further specification—is not even arguably inventive").

[17] *See Ultramercial III*, 772 F.3d at 712, 716 (finding no inventive concept in the patent where one of the claims included how users access content including restricting access); *Wolf*, 2014 WL 7639820, at *2-3, *12 (finding the claims lacked inventive concept which contained a browse feature); *IpLearn v. K12 Inc.*, No. 11-1026-RGA, 2014 U.S. Dist. LEXIS 173850, at *16 (D. Del. Dec. 17, 2014) (finding no inventive concept when one of the claims included a share feature for content "to be shared with others"); *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, No. CV 11-908-SLR, 2015 WL 846532, at *7 (D. Del. Feb. 24, 2015) (claims reciting generic steps of "presenting, sending and receiving" the requested content did not supply an inventive concept).

24

mentioned previously, those claims only include generic computing equipment or functions and do not contain an inventive concept. *See Wolf*, 2014 WL 7639820, at \*12; *Alice*, 134 S. Ct. at 2358; *buySAFE*, 765 F.3d at 1355. Affinity contends claim 16, which describes the process of buffering, adds an inventive concept. However, despite Affinity's best effort to convince the Court otherwise, "buffering is and always has been an incidental and conventional step in transmitting data." Defs.' Mot. at 17; *See CyberSource*, 654 F.3d at 1375. Claim 15 describes the request for and delivering of content over a network, however the Federal Circuit held sending and receiving information over a network "is not even arguably inventive." *buySAFE*, 765 F.3d at 1355.

In sum, the dependent system and method claims, considered with Claims 1, 8, and 14, either individually or as an ordered combination, all describe conventional, well known and routine concepts, accomplished using computer hardware and software recited in "purely functional and generic" terms and are invalid under § 101. *See Alice*, 134 S. Ct. at 2360. Accordingly, the Court finds as a matter of law that the dependent claims do not add something to the abstract idea that is an "integral" or "significant part" of the invention.

## D. Preemption inquiry

United States Supreme Court jurisprudence makes it clear that the rationale for excluding laws of nature, natural phenomena and abstract ideas from patentability is the concern of preemption. *See Alice*, 134 S. Ct. at 2354. "'[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws." *Id.* (quoting *Mayo*, 132 S. Ct. at 1293). In analyzing whether a patent is preemptive, the Supreme Court has stated that the relevant question is "how much future innovation is foreclosed relative to the contribution of the inventor." *Mayo,*

132 S. Ct. at 1303. The concern recognized by the Supreme Court is that "patent law not inhibit further discovery by improperly tying up the future use of" "the basic tools of scientific and technological work" which the Court has found to be the basic "building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354. Although much of the preemption analysis is subsumed in step two of the *Mayo/Alice* analysis, it will also be addressed separately by the Court. *See Open Text, S.A. v. Box, Inc., et al.*, No. 13-cv-04910-JD, 2015 WL 269036, at *4 (N.D. Cal. Jan. 20, 2015) (the "preemption concern . . . is [] baked into the *Mayo/Alice* test"). Affinity argues that the claimed inventions of the '085 Patent do not risk preemption because the patent's claims do not cover radio, portable televisions, "portable DVD players, CD players, traditional MP3 players . . . or the Walkman." Pl.'s Resp. at 16. However, Amazon contends that the '085 patent is preemptive because it prohibits anyone wishing to implement the abstract idea of playing media on a portable device "without risking an infringement suit by Affinity." Defs.' Reply at 6. Amazon further argues that "[p]atents like Affinity's, which are agnostic about the specific technology used to implement its claimed invention, create an unreasonable risk of burdening *all* present and future ways of doing so and threaten innovation." *Id.* (emphasis in original).

In determining how much future innovation is foreclosed relative to the contribution of the inventor, a claim need not tie up the entire field to be preemptive, rather the concern is whether the claim "tie[s] up too much future use" of the abstract idea. *See Mayo*, 132 S. Ct. at 1302. In other words, the "pre-emption inquiry focuses on whether the patent 'would risk disproportionately tying up the use of the underlying ideas.'" *Cloud Satchel*, 2014 WL 7227942 at *9 (citing *Alice*, 134 S. Ct. at 2354; *Mayo*, 132 S. Ct. at 1294).

On the issue of preemption, the analysis of steps one and two under the *Mayo/Alice* test leads the Court to side with Defendants. Allowing the asserted claims to survive would curb any

innovation related to the implementation of the abstract idea on potentially any portable device that utilizes the Internet. The asserted claims of the '085 patent preempt delivering selectable media content and subsequently playing the selected content on a portable device, thereby monopolizing the idea, as is evidenced by the scope in the specification, on ubiquitous devices such as: "a network radio, a modular device, an audio system, a personal digital assistant (PDA), a cellular phone, or other electron devices." '085 Patent col 4 l. 35-37. In this case, it is clear neither the system nor method claims, considered individually or as an ordered combination, impose any significant limitation on the abstract idea and, therefore, disproportionately tie up the future use of that idea.

## IV. Conclusion and Recommendations

For the foregoing reasons, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** and that this matter be **DISMISSED.**

It is further recommended that Defendants' pending Motions to transfer Venue to the Western District of Texas, Austin division be **DENIED as MOOT.**

The parties may wish to file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commc'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). To the extent that a party has not been electronically served by the Clerk with this Report and Recommendation pursuant to the CM/ECF procedures of this district, the Clerk is directed to send such party a copy of this Report and Recommendation by a national overnight delivery service having confirmation of pickup and delivery.

    **SIGNED** this 12th day of June, 2015.

JEFFREY C. MANSKE
U.S. MAGISTRATE JUDGE