**United States District Court**
**Western District of Texas**
**Waco Division**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| Affinity Labs of Texas, LLC, | ) | |
| | ) | The Honorable Walter S. Smith, Jr. |
| Plaintiff, | ) | |
| | ) | Case No. 6:15-cv-00029-WSS-JCM |
| vs. | ) | |
| | ) | **Jury Trial Demanded** |
| Amazon.com, Inc. | ) | |
| Amazon Digital Services, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Plaintiff Affinity Labs of Texas, LLC's Objection to Report and Recommendation of The United States Magistrate Judge**

**Table of Contents**

Introduction ........................................................................................................................ 1

Argument ........................................................................................................................... 1

I.      The Magistrate Judge erred in finding that the '085 patent claims an abstract idea.............. 3

II.     The Magistrate Judge erred in finding that the '085 patent claims fail to recite an inventive step. ............................................................................................................................. 7

III.    The Magistrate Judge erred in his analysis of the '085 patent dependent claims................ 13

IV.     The Magistrate Judge erred in finding the motion ripe for adjudication. ........................... 14

V.      The Magistrate Judge erred in his preemption analysis of the '085 patent claims. ............. 18

VI.     The Magistrate Judge erred in striking the declaration of Kevin C. Almeroth.................... 19

Conclusion ....................................................................................................................... 20

## Table of Authorities

**Page**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
  728 F.3d 1336 (Fed. Cir. 2013) ...................................................................... 15, 17

*Alice Corp. v. CLS Bank Int'l,*
  134 S. Ct. 2347 (2014) ..................................................................................... *passim*

*Ameritox, Ltd. v. Millennium Health, LLC,*
  No. 13-cv-832-WMC, 2015 U.S. Dist. LEXIS 53818 (W.D. Wis. Apr. 24, 2015) ........... 17, 18

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
  314 F.3d 1313 (Fed. Cir. 2003) ............................................................................ 16

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
  365 U.S. 336 (1961) ............................................................................................. 5

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co.,*
  687 F.3d 1266 (Fed. Cir. 2012) ........................................................................... 15

*Bilski v. Kappos,*
  561 U.S. 593 (2010) ............................................................................. 2, 3, 4, 8, 18

*Cal Inst. of Tech. v. Hughes Commc'ns Inc.,*
  No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist. LEXIS 156763 (C.D. Cal. Nov. 3, 2014) ..... 20

*Certified Measurement, LLC v. Centerpoint Energy Houston Elec. LLC,*
  No. 14-CV-627-RSP, 2015 U.S. Dist. LEXIS 39821 (E.D. Tex. Mar. 29, 2015) ............. 15, 17

*Chung v. Bed Bath & Beyond, Inc.,*
  EP-09-CA-330-FM, 2011 U.S. Dist. LEXIS 151104 (W.D. Tex. Dec. 20, 2011) ................. 1, 2

*Clear with Computers, LLC v. Altec Indus.,*
  No. 6:14-cv-00089, 2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3, 2015) .......................... 4

*CLS Bank Int'l v. Alice Corp.,*
  717 F.3d 1269 (Fed. Cir. 2013) ........................................................................... 16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
  776 F.3d 1343 (Fed. Cir. 2014) ...................................................................... 4, 15

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2011) ............................................................................. 4

*DDR Holdings LLC v. Hotels.com, L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014) ....................................................... 6, 7, 8, 11, 18

*Dealertrack, Inc. v. Huber,*
  674 F.3d 1315 (Fed. Cir. 2012) ........................................................................... 11

*Diamond v. Diehr,*
  450 U.S. 175 (1981) ..................................................................................... 11, 12

*DietGoal Innovations LLC v. Bravo Media LLC,*
  33 F. Supp. 3d 271, 290 (S.D.N.Y. 2014) .............................................................. 4

*Fairfield Indus., Inc. v. Wireless Seismic, Inc.*,
   No. 4:14-cv-2972, 2014 U.S. Dist. LEXIS 176599 (S.D. Tex. Dec. 23, 2014) ........................ 5

*Freeman v. Cnty. of Bexar*,
   142 F.3d 848 (5th Cir. 1998) ................................................................................................. 2

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ................................................................................................................. 3

*Guidry v. Am. Pub. Life Ins. Co.*,
   512 F.3d 177 (5th Cir. 2007) ........................................................................................... 9, 19

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) (en banc),
   *aff'd on other grounds*, 561 U.S. 593 (2010) ....................................................................... 8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   No. PWG-14-111, 2015 U.S. Dist. LEXIS 62601 (D. Md. May 12, 2015) ......................... 3, 5

*Intellectual Ventures I LLC v. Symantec Corp.*,
   No. 10-1067, 2015 U.S. Dist. LEXIS 52527 (D. Del. Apr. 22, 2015) .................................... 4

*Jones v. Hardy*,
   727 F.2d 1524 (Fed. Cir. 1984) ........................................................................................... 13

*Kenexa Brassring, Inc. v. HireAbility.com, LLC*,
   No. 12-cv-10943, 2015 U.S. Dist. LEXIS 56156 (D. Mass. Apr. 28, 2015) ..................... 9, 17

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ............................................................................................................. 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2011) ................................................................................................ *passim*

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*,
   No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408 (D. Del. Apr. 15, 2015) ........................... 18

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 (2011) ......................................................................................................... 16

*Mobile-Plan-IT v. Facebook Inc.*,
   No. 14-cv-1709-RS, 2015 U.S. Dist. LEXIS 52343 (N.D. Cal. Apr. 20, 2015) ................... 18

*Morsa v. Facebook, Inc.*,
   No. 14-161-JLA, 2014 U.S. Dist. LEXIS 180968 (C.D. Cal. Dec. 23, 2014) ..................... 3, 5

*MySpace, Inc. v. GraphOn Corp.*,
   672 F.3d 1250 (Fed. Cir. 2012) .............................................................................................. 2

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   2012-1696, 2015 U.S. App. LEXIS 9721 (Fed. Cir. June 11, 2015) ................................... 9, 15

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14-cv-01622-HSG, 2015 U.S. Dist. LEXIS 44856 (N.D. Cal. Apr. 6, 2015) ................... 4

*Orion IP, LLC v. Hyundai Motor Am.*,
   605 F.3d 967 (Fed. Cir. 2010) ................................................................................................ 9

*Parker v. Flook,*
  437 U.S. 584 (1978) ........................................................................................... 3

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ......................................................... 16

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
  601 F.3d 1319 (Fed. Cir. 2010) .............................................................. 11, 12, 13

*Stoneeagle Servs., Inc. v. Pay-Plus Solutions, Inc.,*
  No. 13-cv-2240-T-33MAP, 2015 U.S. Dist. LEXIS 15144 (M.D. Fla. Feb. 9, 2015) ....... 13, 14

*Teva Pharm. USA, Inc. v. Sandoz, Inc.,*
  135 S. Ct. 831 (2015) .................................................................................. 16, 20

*Trading Techs. Int'l v. CQG, Inc.,*
  No. 05-cv-4811, 2015 U.S. Dist. LEXIS 22039 (N.D. Ill. Feb. 24, 2015) ................. 6

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.,*
  617 F.3d 1296 (Fed. Cir. 2010) ......................................................................... 11

*Tremont LLC v. Halliburton Energy Servs.,*
  696 F. Supp. 2d 741 (S.D. Tex. 2010) ............................................................... 19

*TriPlay, Inc. v. WhatsApp, Inc.,*
  No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068 (D. Del. April 28, 2015) ............ 13

*Ultramercial Inc. v. Hulu, LLC,*
  722 F.3d 1335 (Fed. Cir. 2013),
  *vacated and remanded, WildTangent, Inc. v. Ultramercial, LLC,*
  134 S. Ct. 2870 (2014) ...................................................................................... 15

*Ultramercial Inc. v. Hulu, LLC,*
  772 F.3d 709 (Fed. Cir. 2014) ................................................................. *passim*

**Statutes**

28 U.S.C. § 636(b)(1)(C) ....................................................................................... 1

35 U.S.C. § 101 ......................................................................................... *passim*

35 U.S.C. § 102 ............................................................................................ 2, 8, 9

35 U.S.C. § 103 ..................................................................................................... 2

35 U.S.C. § 112 ...................................................................................... 2, 10, 11

35 U.S.C. § 282 ................................................................................................... 16

35 U.S.C. §112(a) ............................................................................................... 10

**Other Authorities**

Fed. R. Civ. P. 12 ...................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................... 10, 19

Fed. R. Civ. P. 12(c) ............................................................................... 1, 19, 20

iv

Fed. R. Civ. P. 56.................................................................................................................. 19

Fed. R. Civ. P. 72(b) .............................................................................................................. 1

## Introduction

The Supreme Court's recent attention to the "abstract ideas" exception to § 101 is for one reason and one reason only: business method patents. These are patents that take some pre-Internet fundamental economic principle or conventional business practice and merely apply them in a technological context. One of the hallmarks of these patents is that the computer implementations merely serve to increase the speed or efficiency of a pre-Internet practice. This is not a business method patent case. The Magistrate Judge went far beyond the scope of the Supreme Court and Federal Circuit's § 101 jurisprudence in finding unpatentable a concrete and tangible invention directed towards improving management and delivery of media to consumers. The Magistrate Judge's analysis is at odds with the U.S. Patent and Trademark Office's post-*Alice* guidelines, and instead relies on district court decisions and a legal framework advanced by one judge of the Federal Circuit. This is not the law. And the Supreme Court's § 101 case law and the Federal Circuit precedent do not support this result.

Affinity Labs respectfully submits the following objections to the Magistrate Judge's Report and Recommendation finding that the claims of asserted U.S. Patent 8,688,085 (the "'085 patent") ineligible under 35 U.S.C. § 101 and granting Amazon's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. 47. The Magistrate Judge erred because he expanded the scope and application of the abstract ideas doctrine under Step 1 and Step 2 of the Supreme Court's *Mayo* test. The Magistrate Judge further erred by making inherent claim construction findings without a proper analysis and resolving factual issues against the non-movant, Affinity Labs, while ignoring evidence to the contrary. Affinity Labs thus objects in full to the Magistrate Judge's Report and Recommendation.

## Argument

A party objecting to a Magistrate Judge's report and recommendation "is entitled to a *de novo* determination of those portions of the report to which [it] objects." *Chung v. Bed Bath & Beyond, Inc.*, EP-09-CA-330-FM, 2011 U.S. Dist. LEXIS 151104, *4 (W.D. Tex. Dec. 20, 2011) (citing 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)). "[T]he district court has wide

1

discretion to consider and reconsider the Magistrate Judge's recommendation." *Id.* (citing *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998)). "[T]he court may accept, reject, or modify the report, in whole or in part." *Id.*

Section 101 of the Patent Act represents Congress' intention to allow a broad scope of patentability. *See* Dkt. 52 at 1. And there remains an open question whether § 101 is even a basis for a defense to pa§ 101tent infringement at all. *See MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1258-62 (Fed. Cir. 2012). Regardless, in its treatment of cases largely arising from PTO proceedings, the Supreme Court has identified only three limited exceptions to § 101: "laws of nature, natural phenomena, and abstract ideas." *See, e.g.*, *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (internal quotes omitted). Whether a patent falls within the "abstract ideas" exception is the result of a two part analysis. *See id.* at 2355. First, the court must determine if the claims at issue are directed to an abstract idea, as defined by the Supreme Court and the Federal Circuit. *Id.* If, and only if, Step 1 is met, then the court must determine whether the remaining claim elements "both individually and 'as an ordered combination . . . transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1297-98 (2011)).

Five foundational principles from the Supreme Court are critical to any § 101 analysis. First, "§ 101 patent-eligibility is *only a threshold test*:" The Patent Act sets forth more stringent standards for patentability beyond § 101, such as § 102 (novelty), § 103 (non-obviousness), and § 112 (particularly described). *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (emphasis added). Second, the abstract-idea exception to § 101 focuses on excluding "patents that claim the '*buildin[g] block[s]*' of human ingenuity," as opposed to other patent claims "that integrate the building blocks into something more," which are patent eligible. *See Alice*, 134 S. Ct. at 2354 (citing *Mayo*, 132 S. Ct. at 1303). Third, the justification for the abstract-idea exception is "one of preemption." *See id.* Fourth, the abstract-idea exception is a limited doctrine, and the Supreme Court has made clear it "tread[s] carefully in construing this exclusionary principle lest it *swallow all of patent law*." *Id.* (emphasis added). Finally, and relatedly, the *only* abstract ideas

that the Supreme Court has identified are (1) mathematical algorithms and (2) fundamental economic practices. *See Gottschalk v. Benson*, 409 U.S. 63 (1972) (mathematical algorithm); *Parker v. Flook*, 437 U.S. 584 (1978) (mathematical algorithm); *Bilski*, 561 U.S. 593 (2010) (fundamental economic practice of risk hedging); *Alice*, 134 S Ct. 2347 (2014) (fundamental economic practice of intermediated settlement). These five foundational principles are critical to any analysis under § 101, and indeed, compel a finding that the claims in the '085 patent are eligible. The Magistrate Judge's Report and Recommendation is inconsistent and incompatible with these principles and, therefore, should not be accepted. As set forth below, the Magistrate Judge erred by finding the patent invalid on the pleadings alone, and also erred in his application of the Supreme Court's *Mayo* test.

**I.    The Magistrate Judge erred in finding that the '085 patent claims an abstract idea.**

The Magistrate Judge erred in his conclusion that Amazon established Step 1 of the *Mayo* test—i.e., that the claims of the '085 patent were drawn to an abstract idea. *See, e.g.*, R&R at 12-18. The '085 patent is directed to a concrete and tangible invention, not an abstract idea. The Federal Circuit has defined an abstraction as "an idea, having no particular *concrete* or *tangible* form." *Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("*Ultramercial III*"); *see also Morsa v. Facebook, Inc.*, No. 14-161-JLA (JPRx), 2014 U.S. Dist. LEXIS 180968, at *15 (C.D. Cal. Dec. 23, 2014) ("The *dispositive* inquiry [for Step 1] is whether the concept to which a claim is drawn has 'no particular concrete or tangible form.'") (citing *Ultramercial III*, 772 F.3d at 715) (emphasis added). A system for managing and delivering media to a mobile device by way of a customized user interface is inherently tangible and concrete. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. PWG-14-111, 2015 U.S. Dist. LEXIS 62601, at *43 (D. Md. May 12, 2015) (concluding that the "*mobile interface* is in fact a *tangible invention*—'it is a *user interface* (implemented by software) that is embodied in a *tangible medium* (e.g., a PDA or other computer device with input and output devices) and directly and necessarily tied to computing devices") (emphasis added). The '085 patent claims do not relate to

a business method, which is what the Supreme Court and Federal Circuit addressed in *Bilski*, *Alice*, *Content Extraction*, *Ultramercial*, and *OIP Technologies*. And even if it were, the Supreme Court has refused to impose a per se rule invalidating all business methods. *See Bilski*, 561 U.S. at 606-13. The claims in the '085 patent relate to media distribution technology, which is inherently concrete and tangible, and always has been.

This conclusion is further compelled through alternative measures courts use to determine if a patent claim includes an abstract idea. "When analyzing whether a claim is directed to an abstract idea, some courts ask whether the claims' steps 'can be performed in the *human mind*, or by a *human using a pen and paper*.'" *See OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 U.S. Dist. LEXIS 44856, at *10 (N.D. Cal. Apr. 6, 2015) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)) (emphasis added). "Another helpful way of assessing whether the claims of the patent are *directed to an abstract idea* is to consider if all of the steps of the claim could be performed by human beings in a non-computerized 'brick and mortar' context." *Intellectual Ventures I LLC v. Symantec Corp.*, No. 10-1067, 2015 U.S. Dist. LEXIS 52527, at *25-26 (D. Del. Apr. 22, 2015) (emphasis added). Numerous district courts have used this test to determine if an abstract idea exists in the claims. *See, e.g.*, *Clear with Computers, LLC v. Altec Indus.*, No. 6:14-cv-00089, 2015 U.S. Dist. LEXIS 28816, at *11 (E.D. Tex. Mar. 3, 2015) ("The steps performed by the claimed computer elements are functional in nature and could easily be performed by a human."); *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 290 (S.D.N.Y. 2014) (invalidating patent because the method "can be performed by a human using pen and paper"). It is undisputed that the claims of the '085 cannot be performed in the human mind or by a human using pen and paper. R&R at 17. For the courts cited above, this was sufficient to determine whether the claims were eligible for patent protection under § 101. The Magistrate Judge erred finding otherwise.

Even the Magistrate Judge's characterization of the invention—"delivering selectable media content and subsequently playing the selected content on a portable device"— is inherently tangible and concrete and not an abstract idea. *See, e.g.*, R&R at 16. Indeed, the

concept itself includes numerous explicit, implicit, and above all else, necessary concrete and tangible characteristics: a portable device, a media storage library, and a communications network for selecting and receiving media. As a useful distinction, in *Ultramercial*, the Federal Circuit found *intangible* claims directed to "using advertising as an exchange for currency." 772 F.3d at 715. In *Morsa*, the court found intangible claims directed towards "targeting advertisements to certain consumers." *Morsa*, 2014 U.S. Dist. LEXIS 180968, at *15. Neither of these concepts included tangible or concrete elements in stark contrast to the tangible and concrete elements found in the Magistrate Judge's own characterization of the invention. This fact compels the conclusion that the '085 patent is not directed to an abstract idea at all, but an improvement to the tangible and concrete field of telecommunications and media distribution.

The recent decision in *Intellectual Ventures v. Capital One* is instructive. Like the customized user interface in the '085 patent, the Special Master concluded that the "*mobile interface* is in fact a *tangible invention*—'it is a user interface (implemented by software) that is embodied in a *tangible medium* (e.g., a PDA or other computing device with input and output devices) and directly and necessarily tied to computing devices.'" 2015 U.S. Dist. LEXIS 62601, at *43 (emphasis added). Further proof that the mobile interface was tangible included that it "can be perceived, interacted with and is directly tied to a machine," *see id.*, just like "playing media on a portable device" and the claimed inventions in the '085 patent. Thus the Magistrate erred in finding the claims were not directed towards a concrete and tangible concept.

The Magistrate Judge also erred in his legal framework for Step 1. The Magistrate Judge adopted a "quick look" approach and focused on the "purpose" of the claims in his analysis. *See e.g.*, R&R at 11. But the Supreme Court has rejected the suggestion that a claimed invention can be reduced to an "essential element," "gist" or "heart." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345 (1961). Nor has the Federal Circuit ever adopted such a test. The test employed by the Magistrate Judge is too susceptible to over-generalization for almost any field of invention. *See, e.g.*, *Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, No. 4:14-cv-2972, 2014 U.S. Dist. LEXIS 176599, at *11 (S.D. Tex. Dec. 23, 2014) (cautioning that "any

claim, described at a certain level of generality, can be challenged as directed to an abstract idea"). As a result, the Magistrate Judge eviscerated almost all of the claim language in pursuit of a generic purpose and concluded that the invention, for the purposes of Step 1, was no different than a transistor radio from the 1940s. *See* R&R at 15. But this early 20th Century analog technology is far too removed from the capabilities, challenges, and systems for distributing media over today's digital networks. *See Trading Techs. Int'l v. CQG, Inc.*, No. 05-cv-4811, 2015 U.S. Dist. LEXIS 22039, at *13 (N.D. Ill. Feb. 24, 2015) ("This Court concludes, in part, from the apparent differences between the analog versions of trading and electronic trading that the claims of the patents in suit are not directed to the abstract idea of 'placing an order for a commodity on an electronic exchange.'").

Thus the Magistrate Judge erred in employing a "quick look" test to determine the concept of the claims under *Mayo* Step 1. *See, e.g.*, R&R at 11-12. In particular, the Magistrate Judge erred in excluding from the patent's purpose any reference or consideration to an access-restricted library of content, a customized user interface, a software application for presenting a user interface for the network-based media managing system, and a network based delivery resource maintaining a list of network locations for the selected content.

The Magistrate Judge further erred by expanding the categories of recognized "abstract ideas" based on whether a patent concept (or purpose) itself is a "well-known and longstanding" practice. *See* R&R at 13 n.8 & n.9, *id*. at 14-15. In its four relevant decisions, the Supreme Court has only identified mathematical algorithms and fundamental economic practices as abstract ideas. *See* pp. 2-3 above. The Federal Circuit has generally agreed with these two categories. *See DDR Holdings LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014). While the Supreme Court has not completely delimited the boundaries of the abstract ideas category, *see Alice*, 134 S. Ct. at 2357, the Court has emphasized that the § 101 doctrine is one of restraint. *Id*. at 2354 (citing *Mayo*, 132 S. Ct. 1289). Courts are warned to "tread carefully in construing this exclusionary principle lest it *swallow all of patent law*." *Id*. (emphasis added). The Magistrate Judge went beyond those categories of abstract ideas discussed by the Supreme Court's and

Federal Circuit's case law and instead found the claims of the '085 patent directed to an abstract idea because "delivering selectable media content and subsequently playing the selected content on a portable device" is a "long-standing commercial practice." R&R at 15. But if a court were to adopt the Magistrate Judge's approach to identifying whether a concept was directed to an abstract idea, almost any patent—and certainly any innovation in the long-established telecommunications field—would fail Step 1 of the *Mayo* analysis. This could not have been the result the Supreme Court intended. *See Alice*, 134 S. Ct. at 2355.

In sum, the Magistrate Judge erred under Step 1 at least because (1) the claims of the '085 patent are tangible and concrete—not abstract, (2) the claims do not fall within any recognized category of abstract ideas as set forth by the Supreme Court and Federal Circuit, and (3) the "quick look" test of the '085 patent ignores the actual claimed inventions.

## II.   The Magistrate Judge erred in finding that the '085 patent claims fail to recite an inventive step.

As an initial matter, the '085 patent claims satisfy § 101 because like those found patentable by the Federal Circuit in *DDR*, the claims are rooted in a technological solution to a problem arising in the technical fields of telecommunications and media distribution. In *DDR*, the claims improved on the challenge of retaining website visitors. Traditionally, a visitor was transported to a third party's website upon the click of an advertisement for a third-party product. 773 F.3d at 1257. The claimed inventions in *DDR* addressed this problem, not by reinventing the Internet, but by claiming an outsource provider that directed "the user to an automatically-generated hybrid web page that combines visual 'look and feel' elements" from the original website. *See id.* Even though the Internet and webpage technology was well-known and conventional at that time, the Federal Circuit emphasized that these claims were patent eligible. Indeed, "these claims stand apart [from *Alice* and *Ultramercial*] because they do not merely recite the performance of some ***business practice*** *known from the pre-Internet world* along with the requirement to *perform it on the Internet*. Instead, the claimed solution is *necessarily rooted in computer technology* in order to overcome a problem specifically arising in the realm of

computer networks." *Id.* (emphasis added). Here too, the'085 patent claims addressed a technological problem with a technological solution. Before the claimed inventions, a user interested in media content had limited options. If a user wanted to stream media, he or she was generally tied to a wired connection, such as a traditional home computer. *See, e.g.*, Almeroth Decl. ¶ 7. And if a user wanted to consume media on-the-go, then he or she generally was limited to: 1) choosing content already stored on internal memory on the portable device (i.e., a previously downloaded file on an MP3 player); or 2) choosing content stored on external media such as CDs or cassette tapes. *Id*. Thus just like *DDR*, the inventors provided solutions to these and other computer-centric problems by inventing a media management and distribution system using a customized user interface and dedicated software application for mobile devices.

The Magistrate Judge erred in first applying a "technological arts" test under *Mayo* Step 2. *See* R&R at 20. "[N]o such test has ever been explicitly adopted by the Supreme Court, [the Federal Circuit], or [its] predecessor court." *In re Bilski*, 545 F.3d 943, 960 (Fed. Cir. 2008) (en banc), *aff'd on other grounds*, 561 U.S. 593 (2010). Since at least *Bilski*, Judge Mayer has urged adoption of such a test. *See Bilski*, 561 U.S. at 600. In his recent *Ultramercial III* concurrence, he continued his appeal to the bench. *See* 772 F.3d at 721-22 (Mayer, J., concurring). Yet that is not the law. The Supreme Court in both *Bilski* and *Alice*, over the objection of some justices, refused to invalidate all business method patents. *See Bilski*, 561 U.S. at 657 (Stevens, J. concurring); *Alice*, 134 S. Ct. at 2360-61 (Sotomayor, J., concurring). Nowhere in *Alice* or the Federal Circuit's subsequent decisions is a "technological arts" test applied. In fact, the Magistrate Judge cited to Judge Mayer's concurrence, and not the *Alice* decision itself, for the proposition that *Alice* articulated a technological arts test. *See* R&R at 20. But Judge Mayer's concurrence is not the law and the Magistrate Judge erred by applying it to the claims of the '085 patent. The technological arts test that the Magistrate Judge imposed is, in effect, a super-novelty requirement for § 101. This is inconsistent with § 101 being "only a threshold test," as issues of novelty and non-obviousness are addressed in §§ 102 and 103. The Magistrate Judge's use of the test is also inconsistent with Judge Mayer's concern with weeding out vague business method

patents—which this patent is not. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 2012-1696, 2015 U.S. App. LEXIS 9721, at *12 (Fed. Cir. June 11, 2015) (Mayer, J., concurring).

At the same time the Magistrate Judge imposed this heightened standard for § 101, he also did not consider facts and expert analysis regarding the state of the art in March 2000 or that the claims of the '085 patent were new, novel, non-obvious, and not otherwise "generic." *See* Almeroth Decl. (Dkt. 52-1) ¶¶ 12-13. The Magistrate Judge did not give any weight to the fact that the PTO considered over 600 prior art references and concluded that the claims were new, novel, and non-obvious. Such a finding cannot be squared with the Magistrate Judge's determination that the claimed inventions were generic. At the very least, the Magistrate Judge's fact-based findings on these issues were inappropriate for a Rule 12 motion, and also irreconcilable with the evidence offered by Affinity Labs—which Affinity Labs should not even have to marshal at the pleadings stage. *See id*. ¶¶ 6-14.

The Magistrate Judge also erred by making factual determinations regarding what was generic, conventional, and routine at the time of the invention. The issue of "inventive concept" is inherently factual. *See*, *e.g.*, *Kenexa Brassring, Inc. v. HireAbility.com, LLC*, No. 12-cv-10943, 2015 U.S. Dist. LEXIS 56156, at *19 (D. Mass. Apr. 28, 2015). While novelty is not coextensive with § 101, which is *only* a threshold test for patentability, courts recognize that novelty can overlap with a § 101 analysis. *See Mayo*, 132 S. Ct. at 1304 ("We recognize that, in evaluating the significance of additional steps, the § 101 patent eligibility inquiry and, say, the § 102 novelty inquiry might sometimes overlap."); *Ultramercial III*, 772 F.3d at 1754 ("[A]ny *novelty* in implementation of the idea *is a factor to be considered* only in the second step of the *Alice* analysis."). Novelty, of course, relies on underlying factual issues. *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010) ("[W]e are mindful of the fact that anticipation is a question of fact…"). And at the pleading stage, all factual inferences must be made in Affinity Labs' favor. *See Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Magistrate Judge made several unsupported factual findings regarding what was generic or routine at the time of the invention. *See, e.g.*, R&R at 19-22; *see also, e.g.*, *id*. at 24-25

9

("[Claims 2 and 18] only include generic computing equipment or functions and do not contain an inventive concept"); *id*. at 25 ("[B]uffering is and always has been an incidental and conventional step in transmitting data.") (citing Amazon's attorney argument and a Federal Circuit decision that does not contain the term "buffering"). For instance, the Magistrate Judge found that the customized graphical user interface is "merely a generic computer component." *Id*. at 22. This was an erroneous factual conclusion drawn at an improper stage in this litigation. For one, the Magistrate Judge erred because he did not consider the priority date of March 2000 in the context of this analysis. Indeed, the state of the art as of March 2000 belies any notion that this claim element, as set forth with the rest of Claims 1, 8 and 14, was generic at that time. *See, e.g.*, Almeroth Decl. (Dkt. 52-1) ¶¶ 14. The facts and evidence in this case make clear that the customized graphical user interface combined with the media management and distribution system *did not exist* as of March 2000. And this customized graphical user interface allowed at least some of the benefits over the prior art. For example, the application allowed the interface of a wireless handheld device to correspond to the customization on the website, making the customized media library portable and consistent over multiple platforms and devices. This is discussed generally in the specification. *See, e.g.*, '085 Patent at 10:10-23, 11:20:35. As a result, users were no longer tethered to their home computers, or limited to small personal collections of content on a mobile device. The claim as a whole, therefore, includes an inventive concept.

The Magistrate Judge, therefore, erred in his factual finding to the contrary. At the very least, the Magistrate Judge's conclusion was based on a question of fact, which should not be decided on a Rule 12(b)(6) motion because Affinity Labs is entitled to all inferences drawn in its favor and further because Amazon bears the burden of proof by clear-and-convincing evidence.

The Magistrate Judge compounded this error by inquiring about requirements that do not exist in § 101. *See, e.g.*, R&R at 20-23. Section 112 requires the patent holder to describe and enable the claimed invention *in the specification*. *See, e.g.*, 35 U.S.C. §112(a). And yet the Magistrate Judge's analysis imported aspects of these written description and enablement requirements into a § 101 analysis and further required that the *claims* provide this description.

*See, e.g.*, R&R at 22 ("In the instant case, the claim limitations of Affinity's '085 Patent, specifically the customized user interface, do not identify any specific functionality *or explain 'how'* this customization is to be achieved.") (emphasis added); *id.* ("The claim is devoid of any specific technology or instructions that explain how the device can do what it purports to do or direct the practitioner how to carry out the claims."); *see also* R&R at 20-23.

The Magistrate Judge's analysis in this regard is not supported by the Supreme Court, Federal Circuit,[1] other district courts' § 101 jurisprudence. R&R at 22-23. And contrary to the Magistrate Judge's analysis, the key to the Federal Circuit's *DDR* decision was not that the claims "detailed '*how* interactions with the internet are manipulated to yield a desired result,'" *id.* at 23 (emphasis added), but rather that the claimed *result* overrode "the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *DDR*, 773 F.3d at 1258. Regardless, the Magistrate Judge's findings related to the customized user interface are not appropriate on a Rule 12 motion without claim construction. Even a proper § 112 defense—based on the specification—is an issue of fact. *See, e.g.*, *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010).

The Magistrate Judge also erred in failing to consider the claim as a whole. *See generally* R&R at 18-23. It is black letter law that "[a] new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." *Mayo*, 132 S. Ct. at 1298 (quoting *Diehr*, 450 U.S. at 188). Indeed, "inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some

---

[1] The *Dealertrack, Inc. v. Huber* decision cited by the Magistrate Judge, R&R at 21, was attempting to ascertain whether the claimed computer merely "function[ed] solely as an obvious mechanism for permitting a solution to be achieved more quickly." 674 F.3d 1315, 1333 (Fed. Cir. 2012) (quoting *SiRF Tech.*, 601 F.3d at 1333). Here, there is no dispute that the hardware and software components are not merely vehicles for performing the abstract idea more efficiently—they are instead the object of the inventive idea itself. That is, the invention is directed towards the improvement of the already "computerized" process of managing and distributing media to consumer electronic devices.

sense, is already known." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007). As a result, "[i]t is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis." *Diehr*, 450 U.S. at 188. Thus at the second step of the *Mayo* test, a court must consider the elements in the claims "both individually" and "*as an ordered combination.*" *See Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1298). Here, the Magistrate Judge considered claim limitations individually such as the "network based media managing system," *see* R&R at 19, a wireless cellular telephone device, *id.*, a network based delivery resource, *id.*, and a customized user interface, *id.* at 21. The Magistrate Judge failed, however, to consider the software application as a whole or all of the elements as a combination. *See generally* R&R at 18-23. The claimed combination of elements in the '085 patent was not generic, well-known, routine, or conventional as of March 2000, as evidenced by the file history and Almeroth declaration. *See* Almeroth Decl. (Dkt. 52-1) ¶¶ 12-14. To the contrary, the state of the art in March 2000 compels a finding that the claimed inventions of the '085 patent, as a whole, were new, novel, and non-obvious, and not generic, well-known, conventional, or routine. *See, e.g.*, *id.* At the very least, such a determination would be a factual issue inappropriate for a Rule 12 motion.

Finally, the Magistrate Judge erred by finding that the '085 patent claims fail the machine-or-transformation test. R&R at 18-20. The machine-or-transformation test "can provide a 'useful clue' in the second step of the *Alice* framework." *Ultramercial III*, 772 F.3d at 716 (citations omitted). The test is satisfied if a process (1) is "tied to a particular machine or apparatus," or (2) "transforms a particular article into a different state or thing." *SiRF Tech., Inc.  v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332 (Fed. Cir. 2010). Here, claims 1, 8, and 14 all include software and hardware elements that play a significant part in managing and distributing digital multimedia to mobile devices. The "network based media managing system" is necessary to at least maintain a library of content. *See* '085 Patent at 20:7-8. A "network based delivery resource" maintains a list of network locations for multimedia content and streams multimedia content to a wireless device. *Id.* at 20:19-20. And a specific collection of instructions with

specialized capabilities for execution on a handheld wireless device is stored in a "non-transitory storage medium." *Id*. at 20:10-12. These three components, combined in the specific manner recited by the claims, are necessary to provide a system for managing and distributing multimedia. The hardware and software components do not "function solely as … obvious mechanism[s] for *permitting a solution to be achieved more quickly*." *See SiRF Tech*, 601 F.3d at 1333 (emphasis added). Indeed, no amount of human labor could perform the claimed invention. Accordingly, the Magistrate Judge erred in finding the '085 patent claims failed to satisfy the machine-or-transformation test.

In sum, the Magistrate Judge erred in his Step 2 analysis because the '085 patent claims include an inventive concept and at least because (1) the Magistrate Judge applied a technological arts test that is not supported by controlling case law, (2) the media system with a customized user interface and dedicated software application for wireless handheld devices was not generic, conventional, well-known, or routine as of March 2000, (3) the claim elements as a whole were not generic, conventional, well-known, or routine as of March 2000, (4) the disputes on this topic at least raise factual issues that should not be decided on the pleadings, and (5) the claims surpass the machine-or-transformation test.

## III.   The Magistrate Judge erred in his analysis of the '085 patent dependent claims.

The Magistrate Judge erred in relieving Amazon of its burden to prove that each dependent claim was invalid by clear-and-convincing evidence, R&R at 10, and in his conclusory analysis of the '085 dependent claims. *See* R&R at 23-25. Each patent claim is a separate property right. *See, e.g.*, *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984). Courts have recognized that a defendant fails in its burden of proof on § 101 if the defendant provides a conclusory or superficial analysis of the dependent claims. *See TriPlay, Inc. v. WhatsApp, Inc.*, No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068, at *18-19 (D. Del. April 28, 2015); *Stoneeagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, No. 13-cv-2240-T-33MAP, 2015 U.S. Dist. LEXIS 15144, at *10 (M.D. Fla. Feb. 9, 2015). Amazon failed to meet its burden in a one-page discussion of the

dependent claims. Dkt. 47 at 16. The Magistrate Judge's analysis also discounted, in conclusory fashion, inventive aspects from the dependent claims. *See, e.g.*, R&R at 23-25. The Magistrate Judge's summary analysis of claims 6, 7, 9, 10, and 15 made no mention of the state of the art in March 2000 and failed to explain *how* the systems and functions were generic, conventional, or routine, with respect to a multimedia management and distribution system for mobile devices, *as a whole*. *See* R&R at 23. Similarly, the Magistrate Judge's analysis of claims 2, 12, and 13 as including only conventional and generic elements was without respect to the invention date or to the invention as a whole. *See* R&R at 24. And the Magistrate Judge's analysis of claims 17, 18, 19, and 20 was in error for similar reasons. In addition, his analysis failed to recognize the specific application or instructions required by claim 18—and claim 2—enabling the wireless device to communicate streaming content to yet another electronic device—such as a car audio system. *See* R&R at 24-25. These features in a multimedia management and distribution system for mobile devices were anything but routine or conventional. *See, e.g.*, '085 Patent at 3:4-14.

The Magistrate Judge erred by disposing of these and the other dependent claims in conclusory and generalized fashion, R&R at 23-25, sometimes without respect to the claim language. *See* R&R at 25 (generalizing claim 15—directed to variable bit rate streaming—as merely "sending and receiving information over a network" and accordingly "not even arguably inventive"); *see also id.* at 24-25 (describing claims 2 and 18 —without reference to any claim language—as "generic computing equipment or functions [that] do not contain an inventive concept"). Neither Amazon's attorney argument, nor the Magistrate Judge's conclusory analysis is clear and convincing evidence that the dependent claims are patent ineligible.

## IV.   The Magistrate Judge erred in finding the motion ripe for adjudication.

Contrary to the Magistrate Judge's analysis, Amazon's Rule 12 motion is premature and the Magistrate Judge erred by making inherent claim construction and factual findings on an incomplete record. *See, e.g.*, R&R at 5-10. The Supreme Court has never approved of invalidating a patent on the pleadings. And only in limited circumstances has the Federal Circuit

affirmed a § 101 finding on the pleadings.[2] Indeed, invalidating a patent at the pleadings is at

most the exception and not the rule. *Certified Measurement, LLC v. Centerpoint Energy Houston*

*Elec. LLC*, No. 14-CV-627-RSP, 2015 U.S. Dist. LEXIS 39821, at *4-5 (E.D. Tex. Mar. 29,

2015) (citing *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273 (Fed. Cir.

2012)). The reasons are twofold. First, a § 101 analysis necessarily relies on construction of

patent claim terms—a generally occurring as a distinct case event. *See, e.g.*, *Bancorp Servs., LLC*

*v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). Second, subsidiary factual

issues also govern the analysis, such as scope of preemption and what was routine, well-known,

and conventional at the time of the invention. *See, e.g.*, *Accenture Global Servs., GmbH v.*

*Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). As detailed in this

Objection, the Magistrate Judge made unsupported claim construction and factual

determinations, thus erring in his analysis of the '085 patent on the pleadings.

　　The Magistrate Judge first erred by shifting the burden onto Affinity Labs to identify a

specific claim construction issue for § 101 purposes. *See* R&R at 7. The '085 patent is presumed

---

[2]　　While there are instances in which the Federal Circuit has affirmed Rule 12 motions on §
101, the court's analysis is limited and opaque. In *Content Extraction*, the Federal Circuit made
clear that the patent owner "conceded at oral argument" that some of the claim elements were
"well-known at the time of filing." *Content Extraction & Transmission LLC v. Wells Fargo*
*Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The Federal Circuit's decisions in
*Ultramercial* are far less clear. In *Ultramercial II*, the Federal Circuit recognized the impropriety
of addressing the underlying factual issues at the Rule 12 stage. *Ultramercial Inc. v. Hulu, LLC*,
722 F.3d 1335, 1339 (Fed. Cir. 2013) ("Almost by definition, analyzing whether something was
'conventional' or 'routine' involves analyzing facts. Likewise, any inquiry into the scope of
preemption—how much of the field is 'tied up' by the claim—by definition will involve historic
facts . . . .") ("*Ultramercial II*"), *vacated and remanded, WildTangent, Inc. v. Ultramercial, LLC*,
134 S. Ct. 2870 (2014). One year later, however, the court—with a different panel—concluded
otherwise without stating its reasoning for making the factual findings that it did. *See generally*
*Ultramercial III*, 772 F.3d at 715-16. In *OIP Techs.*, both the prosecution history and the
specification emphasized that the claimed computer limitations merely automated prior business
practices with generic computer functions like "sending," "being 'programmed,'" and "storing."
U.S. App. LEXIS 9721, at *7-8. As further discussed, the Magistrate Judge went far beyond
these basic observations in its preemption analysis and in concluding that functions like
buffering, streaming, a customized user interface, and a dedicated software application for
wireless cellular devices failed to evince an inventive concept.

valid by law, and it is Amazon's burden to prove that the '085 patent is invalid by clear-and-convincing evidence. *See, e.g.*, *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1284 (Fed. Cir. 2013) (citing 35 U.S.C. § 282 and *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011)). The Magistrate Judge's burden-shifting analysis permitted asymmetrical claim-scope arguments. Perhaps the most elementary rule in patent law is that the scope of the claims in a patent must be the same for infringement (patent holder's burden) as it is for invalidity (accused infringer's burden). *See, e.g.*, *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003). Thus, Amazon is not able to maintain a broad interpretation of the claims in the '085 patent for purposes of determining validity, while advocating for a narrow interpretation of the claims for purposes of determining infringement. Here, Amazon did just that. Amazon asserted an affirmative defense of non-infringement in its answer. Dkt. 21 at 9. Then it concurrently maintained that the claims of the '085 patent preempted all forms of playing media on a portable device. Dkt. 56 at 6-7. The Magistrate Judge was aware of this contradiction, Dkt. 52 at 19, yet nonetheless determined that the '085 patent claims would curb implementation of the abstract idea on potentially any portable device that uses the Internet. *See, e.g.*, R&R at 25-27. This conclusion was inconsistent, and at the very least, necessarily entailed claim construction. Had the Magistrate Judge waited until claim construction was complete, he would have had a full record and could have applied one—and only one—construction of the claimed inventions.

The Magistrate Judge further erred by implicitly deciding claim construction issues without a proper record. *See e.g.*, R&R at 19 ("[A] 'network based delivery resource,'… is merely a network that sends and receives data [media content] in a streaming form."); *see also id.* at 22 ("[T]he claims of the '085 Patent present the customized/graphical user interface as merely a generic computer component."), *id.* at 23-25, and 25-27. Claim construction is dictated by specific canons of construction by the Federal Circuit. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-19 (Fed. Cir. 2005) (en banc). And the Supreme Court has held that claim construction can involve underlying issues of fact. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 838 (2015). For this reason, district courts tend to hold claim construction in patent

16

litigation as a distinct event in the pre-trial schedule, which involves focused briefing, oral argument, and potentially expert testimony. The Court in this case has already set a schedule for claim construction. Dkt. 49 at 3-4. In his analysis, the Magistrate Judge did not engage in formal claim construction, but instead resolved claim construction issues informally. *See, e.g.*, R&R at 19 and 22 (construing "network based delivery resource" and "graphical user interface" informally). As a result, the Magistrate Judge made conclusions on issues that involved claim construction, such as preemption, without ever conducting the proper claim construction analysis. *See, e.g.*, R&R at 25-27. The Magistrate Judge erred in this regard.

Third, while the Magistrate Judge correctly found that Amazon had a burden of clear-and-convincing evidence for all underlying factual disputes, R&R at 9-10, he later erred by not applying this standard in his preemption analysis and in resolving factual questions concerning what was routine, conventional, or well-known in March 2000. Courts recognize that subsidiary issues to a § 101 analysis—like inventive concept and preemption—are inherently factual. *Certified Measurement*, 2015 U.S. Dist. LEXIS 39821 at *4 (quoting *Accenture*, 728 F.3d at 1340-41) (While § 101 is a question of law, "the legal analysis can – and often does –'contain underlying factual issues.'"); *see also, e.g.*, *Kenexa*, 2015 U.S. Dist. LEXIS 56156, at *19; *Ameritox, Ltd. v. Millennium Health, LLC*, No. 13-cv-832-WMC, 2015 U.S. Dist. LEXIS 53818, at *6-7 (W.D. Wis. Apr. 24, 2015). Nonetheless, the Magistrate Judge made several factual findings as to preemption and what was "in the prior art," "generic," "conventional," "routine," or "well-understood." *See e.g.*, R&R at 17, 19, 20-21, 23-26. And the Magistrate Judge's factual findings were irrespective of the March 2000 priority date—a critical consideration for any validity determination. At the same time, the Magistrate Judge disregarded the declaration of Kevin C. Almeroth, Dkt. 52-1, or that the USPTO specifically found the claimed combination of hardware and software patentable over 600 prior art references. *See* R&R at 10 n.6. The declaration from Affinity Labs' expert and the '085 patent history are evidence of the state of the art in March 2000—the critical time for any validity analysis of the '085 patent—and that the '085 patent claims were new, novel, non-obvious, and above all, patentable. *See, e.g.*, Almeroth

Decl. (Dkt. 52-1) ¶¶ 6-14. At the very minimum, the Almeroth Declaration and the file history demonstrates that there is a factual issue as to whether the claims in the '085 patent involve generic, well-known, routine, or conventional elements—individually or in combination. On a Rule 12 motion, the Magistrate Judge improperly resolved factual disputes against Affinity Labs, the non-movant, which is error.

Thus, at a minimum, the Magistrate Judge erred in finding that the § 101 issue was ripe for adjudication on the pleadings because claim construction and factual disputes existed.

## V.   The Magistrate Judge erred in his preemption analysis of the '085 patent claims.

The entire policy justification for § 101 is based on the risk of preemption. *See Alice*, 134 S. Ct. at 2354 (citing *Bilski*, 130 S. Ct. 3218) ("We have described the concern that drives this exclusionary principle as one of pre-emption."). Thus, courts regularly deny § 101 challenges where there is no concern of preemption. *See DDR*, 773 F.3d at 1256 ("It is also clear that the claims at issue do not attempt to *preempt every application of the idea* of increasing sales by making two web pages look the same, or of any other variant suggested by [the defendant].") (emphasis added).[3]

The Magistrate Judge erred because the '085 patent does not preempt all—or substantially all—systems for delivering selectable media content and subsequently playing the selected content on a portable device. For instance, the claimed inventions of the '085 patent do not preempt all avenues of selecting and playing media on a portable device. The claims do not preempt future innovations in portable DVD players, CD players, traditional MP3 players (including numerous generations of the iPod, which arose after the claimed inventions in this

---

[3]   *See also, e.g.*, *Ameritox*, 2015 U.S. Dist. LEXIS 53818, at *6-7 (finding "defendant failed to offer clear and convincing evidence, in the form of expert testimony or otherwise" to support that the asserted patent was preemptive); *Mobile-Plan-IT v. Facebook Inc.*, No. 14-cv-1709-RS, 2015 U.S. Dist. LEXIS 52343, at *11 (N.D. Cal. Apr. 20, 2015) (invention scope is limited to particular issues arising among conference attendees); *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408, at *17 (D. Del. Apr. 15, 2015) (claim contains "meaningful limitations that prevent it from preempting the abstract idea of receiving, translating, and delivering a message" and "is limited to SMS text messages between a mobile device and the Internet").

case), or the Walkman, which all either store media locally (i.e., via a download) or play media from a locally-stored medium, like a CD or cassette. The claims do not even claim all modes of receiving streaming media. For instance, the claims do not cover streaming media to a traditional personal computer. In fact, the claims do not even claim all modes of streaming media to mobile devices. Amazon is free to stream media to a mobile device without the use of a mobile application/collection of instructions that mirror the user customizations available through a website. The Magistrate Judge did not address these issues, but summarily addressed the issue of preemption. *See generally* R&R at 25-27. There is no risk of preemption, as discussed by the Supreme Court, the Federal Circuit, or district courts across the country, and the Magistrate Judge erred in this respect.

## VI.    The Magistrate Judge erred in striking the declaration of Kevin C. Almeroth

"When either the pleader or the moving party submits materials outside the pleadings in connection with a motion to dismiss,[4] the court must convert the motion into a summary judgment motion under Rule 56 if the court chooses to accept those materials." *Tremont LLC v. Halliburton Energy Servs.*, 696 F. Supp. 2d 741, 852 (S.D. Tex. 2010). Affinity Labs submitted the expert declaration of Kevin C. Almeroth in support of its opposition to Amazon's Rule 12 motion. The declaration included evidence that the claimed inventions were not preemptive, were not the result of "routine," "conventional," or "well-known," technologies, and were in fact new, novel, and non-obvious. *See, e.g.*, Almeroth Decl. (Dkt. 52-1) ¶¶ 6-14. While novelty is not coextensive with § 101, which is *only* a threshold test for patentability, courts recognize that novelty can overlap with a § 101 analysis. *See Mayo*, 132 S. Ct. at 1304; *Ultramercial III*, 772 F.3d at 1754. Dr. Almeroth's declaration at a minimum, was relevant to pre-emption and the inventive concept inquiry. Accordingly, the Magistrate Judge should have at least converted Amazon's motion to one under Rule 56 and allowed limited discovery and claim construction.

Notions of fairness and due process also mandate that the Court consider evidence offered

---

4        "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

by Affinity Labs in deciding a § 101 issue on the pleadings. For one, striking an expert declaration is particularly unfair in this context, where a patent holder is not afforded the opportunity to even marshal all of its supporting facts and file an amended complaint. Secondly, it is unfair for the Court to make generalized "findings" on one hand, while ignoring particularized evidence on the other. The Magistrate Judge acknowledged that his analysis went beyond the pleadings in making "findings when deciding the legal question of …. patent inelgib[ility]." R&R at 9 fn.5 (citing as authority *Cal Inst. of Tech. v. Hughes Commc'ns Inc.*, No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist. LEXIS 156763, at *6 n.6 (C.D. Cal. Nov. 3, 2014)). Yet *Hughes* relied on *Alice*—an appeal from summary judgment with presumably a factual record—and Supreme Court cases involving constitutional provisions and statutes. The general historical observations involved with interpreting these instruments, however, are distinct from patents. *See Teva*, 135 S. Ct. at 840 ("Neither do we find factfinding in this context sufficiently similar to the fact finding that underlies statutory interpretation…Statutes typically (though not always) rest upon congressional consideration of general facts related to a reasonably broad set of social circumstances; patents typically (though not always) rest upon consideration by a few private parties, experts, and administrators of more narrowly circumscribed facts related to specific technical matters.") Accordingly, the Magistrate Judge erred in making findings regarding preemption and what was "generic," "routine," "conventional," and "well-understood" based on "historical findings," while at the same time disregarding and striking the declaration of Kevin C. Almeroth. It is unfair and wrong for the Magistrate Judge to make his own factual findings—as historical observations, or not—and deny Affinity Labs—the non-movant—the opportunity to offer evidence on the same subject.

## Conclusion

Affinity Labs respectfully requests this Court to sustain Affinity Labs' objections to the Magistrate Judge's Report and Recommendation and deny Amazon's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) (Dkt. 47).

Dated: June 26, 2015                    Respectfully Submitted,


By:   */s/ John P. Palmer*
                                     **Naman Howell Smith & Lee, PLLC**
         John P. Palmer (State Bar No. 15430600)
         P.O. Box 1470
         Waco, TX 76703-1470
         Telephone: (254) 755-4100
         Facsimile: (254) 754-6331
         palmer@namanhowell.com

         **Robins Kaplan LLP**
         Ronald J. Schutz (MN Bar No. 130849)
         Cyrus A. Morton (MN Bar No. 287325)
         Patrick M. Arenz (MN Bar No. 386537)
         Daniel R. Burgess (MN Bar No. 389976)
         Shira T. Shapiro (MN Bar No. 390508)
         Kristine A. Tietz (MN Bar No. 393477)

         Western District of Texas Members

         800 LaSalle Avenue, Suite 2800
         Minneapolis, Minnesota 55402
         Telephone: (612) 349-8500
         Facsimile: (612) 339-4181
         RSchutz@robinskaplan.com
         CMorton@robinskaplan.com
         PArenz@robinskaplan.com
         DBurgess@robinskaplan.com
         SShapiro@robinskaplan.com
         KTietz@robinskaplan.com

         **Counsel for Plaintiff**
         **Affinity Labs of Texas, LLC**

**Certificate of Service**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document (Plaintiff Affinity Labs of Texas, LLC's Objection to Report and Recommendation of The United States Magistrate Judge) via the Court's CM/ECF system on June 26, 2015.

June 26, 2015                                   */s/ John P. Palmer*