# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 09/23/2016

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellee under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

cc: Patrick M. Arenz
Gabriel Bell
Jeffrey H. Dean
Gregory G. Garre
Todd Richard Gregorian
J. David Hadden
Brenda L. Joly
Adam Michael Lewin
Benjamen Linden
Cyrus Alcorn Morton
Ravi Ragavendra Ranganath
Ronald James Schutz
Saina S. Shamilov

15-2080 - Affinity Labs of Texas, LLC v. Amazon.com Inc.
United States District Court for the Western District of Texas, Case No. 6:15-cv-00029-WSS

# United States Court of Appeals for the Federal Circuit

---

**AFFINITY LABS OF TEXAS, LLC,**
*Plaintiff-Appellant*

v.

**AMAZON.COM INC.,
AMAZON DIGITAL SERVICES, INC.,**
*Defendants-Appellees*

---

2015-2080

---

Appeal from the United States District Court for the Western District of Texas in No. 6:15-cv-00029-WSS, Judge Walter S. Smith, Jr.

---

Decided: September 23, 2016

---

CYRUS ALCORN MORTON, Robins Kaplan LLP, Minneapolis, MN, argued for plaintiff-appellant. Also represented by RONALD JAMES SCHUTZ, PATRICK M. ARENZ, BRENDA L. JOLY, BENJAMEN LINDEN.

J. DAVID HADDEN, Fenwick & West, LLP, Mountain View, CA, argued for defendants-appellees. Also represented by TODD RICHARD GREGORIAN, SAINA S. SHAMILOV; RAVI RAGAVENDRA RANGANATH, ADAM MICHAEL LEWIN, San Francisco, CA; GABRIEL BELL, GREGORY G. GARRE,

Latham & Watkins LLP, Washington, DC; JEFFREY H. DEAN, Amazon.com, Inc., Seattle, WA.

Before PROST, *Chief Judge,* BRYSON and WALLACH, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This appeal is related to the appeal in *Affinity Labs of Texas, LLC v. DirecTV et al.,* No. 2015-1845, decided today. Although the patents at issue in the two cases are different, they share a similar specification. Because the legal issues presented in the two cases are closely related, our discussion of the governing legal principles in that case will not be repeated here, except to the extent that the difference between the claims in the two cases calls for a somewhat different legal analysis.

I

The patent in suit, U.S. Patent No. 8,688,085 ("the '085 patent"), is entitled "System and Method to Communicate Targeted Information." The abstract describes the patent as directed to a "method for targeted advertising" in which an advertisement is selected for delivery to the user of a portable device based on at least one piece of demographic information about the user.

Despite the title of the patent and the description in the abstract, only three sentences in the specification and only one of the 20 claims deal with targeted advertising.[1]

---

[1] The only portion of the specification that deals with targeted advertising reads: "A user may also provide demographic information allowing advertisers to access the demographic information and provide advertisements based upon the demographic information. For example, an advertiser may want to target Hispanic females in the

The rest of the specification and claims are directed to media systems that deliver content to a handheld wireless electronic device.

Claim 14 of the '085 patent is representative[2] and provides as follows:

> A media system, comprising:
>
> a network based media managing system that maintains a library of content that a given user has a right to access and a customized user interface page for the given user;

---

21-25 year old age group. Through providing demographic information to advertisers, when a user logs into [the depicted homepage] selective advertising can be 'targeted' for a group of users." '085 patent, col. 10, ll. 18-26. The only claim dealing with targeted advertising is claim 5, which is directed to the media system of claim 1, "further comprising a targeted advertising component configured to communicate an advertisement to the given user based at least in part on a demographic of the given user."

[2]   The district court treated claim 14 as representative. Although Affinity has not conceded that claim 14 is representative of the remaining claims, it has not shown how independent claims 1 and 8 differ materially from claim 14. Moreover, while Affinity refers in passing to several of the dependent claims, it presents no substantive argument as to the separate patentability of those claims. Because Affinity has failed to present "any meaningful argument for the distinctive significance of any claim limitations" other than those in claim 14, *Electric Power Group, LLC v. Alstom S.A.*, No. 2015-1778 (Fed. Cir. Aug. 1, 2016), slip op. at 4, we treat claim 14 as representative of all the claims for purposes of this appeal.

4       AFFINITY LABS OF TEXAS, LLC v. AMAZON.COM INC.

>    a collection of instructions stored in a non-transitory storage medium and configured for execution by a processor of a handheld wireless device, the collection of instructions operable when executed: (1) to initiate presentation of a graphical user interface for the network based media managing system; (2) to facilitate a user selection of content included in the library; and (3) to send a request for a streaming delivery of the content; and
>
>    a network based delivery resource maintaining a list of network locations for at least a portion of the content, the network based delivery resource configured to respond to the request by retrieving the portion from an appropriate network location and streaming a representation of the portion to the handheld wireless device.

Stated more succinctly, claim 14 is directed to a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface.

Affinity sued Amazon.com Inc. and Amazon Digital Services, Inc., alleging that they infringed the '085 patent by marketing the Amazon Music system, which allows customers to stream music from a customized library. The Amazon entities moved for the entry of judgment on the pleadings, arguing that the asserted claims were not directed to patentable subject matter.

The magistrate judge recommended that judgment be entered in the Amazon entities' favor. Following the two-stage inquiry for patent eligibility set forth by the Supreme Court in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), and *Alice Corp. v. CLS Bank International,* 134 S. Ct. 2347 (2014),

the magistrate judge found that the '085 patent is directed to an abstract idea—"delivering selectable media content and subsequently playing the selected content on a portable device."

Turning to the next step of the eligibility analysis, the magistrate judge found that the claims of the '085 patent do not contain an "inventive concept." Instead, he concluded, the claims are directed to applying the abstract idea "to the Internet and a generic, electronic device—in this case, a wireless handheld device operating as a 'ubiquitous information-transmitting medium, not a novel machine'" (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716-17 (Fed. Cir. 2014)). The magistrate judge also found that the components recited in the claims are generic. He explained that the "network based media managing system" is a generic database and that the "non-transitory storage medium" could be any kind of memory.

The magistrate judge rejected Affinity's argument that the customized user interface supplies the inventive concept to the claimed invention. The user interface limitation, the magistrate judge explained, does not identify "any specific technology or instructions that explain how the device can do what it purports to do or direct the practitioner how to carry out the claims."

The district court agreed with the magistrate judge's recommendation and entered judgment against Affinity. The court agreed with the magistrate judge that the '085 patent claims are directed to the abstract idea of "delivering selectable media content and subsequently playing the selected content on a portable device." The court also agreed that the claims do not supply an inventive concept as "[t]he '085 Patent solves no problems, includes no implementation software, designs no system. The mere statement that the method is performed by computer does not satisfy the test of inventive concept."

II

A

We begin by addressing the first step of the *Mayo/Alice* inquiry: whether the claims of the '085 patent are directed to an "abstract idea." Like the district court, we hold that the concept of delivering user-selected media content to portable devices is an abstract idea, as that term is used in the section 101 context.

The district court's conclusion is consistent with our approach to the "abstract idea" step in prior cases. For example, *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016), involved a patent on a method for uploading digital images from a cellular telephone to a server, which would then classify and store the images.

Although the claim at issue in that case recited physical components such as a telephone unit and a server, the court noted that "not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry," and it pointed out that the specification made clear that the recited physical components "merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner." *Id.* at 611. The court added that "the specification's emphasis that the present invention 'relates to a method for recording, communicating and administering [a] digital image' underscores that [the claim at issue] is directed to an abstract concept." *Id.* The *TLI* court concluded that, as in this case, the claims were directed to "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *Id.* at 612.

Similarly, in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), we found the process of allowing a consumer to receive copyrighted media in exchange for watching a selected advertisement was an abstract idea. The idea in this case is even broader and more abstract than the idea in *Ultramercial*: The '085 patent covers streaming content generally, not even including an additional feature such as exchanging the consumer's access to the streaming content for the consumer's viewing of an advertisement.

Affinity contends that the '085 patent embodied a concrete technological innovation because, as of its priority date (March 28, 2000), wireless streaming of media was not "routine, conventional, or well-known." The patent, however, does not disclose any particular mechanism for wirelessly streaming content to a handheld device. The specification describes the function of streaming content to a wireless device, but not a specific means for performing that function. Claim 14, in turn, recites (1) a "media managing system" that maintains a library of content, (2) a "collection of instructions" that are "operable when executed" by a handheld wireless device to request streaming delivery of the content, and (3) a "network based delivery resource" that retrieves and streams the requested content to the handheld device. At that level of generality, the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem. The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea. *See Elec. Power Grp., LLC v. Alstom S.A.*, No. 2015-1778, slip op. 12 ("[T]he essentially result-focused, functional character of

8                AFFINITY LABS OF TEXAS, LLC v. AMAZON.COM INC.

claim language has been a frequent feature of claims held ineligible under § 101.").[3]

In addressing the first step of the section 101 inquiry, as applied to a computer-implemented invention, it is often helpful to ask whether the claims are directed to "an improvement in the functioning of a computer," or merely "adding conventional computer components to well-known business practices." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016). The claims of the '085 patent fall into the latter category.

Affinity contends that the magistrate judge improperly engaged in fact-finding when he stated that the idea of delivering media content to a wireless portable device is one of long standing. It is not debatable, however, that the delivery of media content to electronic devices was well known long before the priority date of the '085 patent, and Affinity does not argue otherwise. The magistrate judge cited transistor radios and portable televisions as commonplace examples of the delivery of audio media to portable electronic devices. An example of technology that is even closer to the idea underlying the '085 patent is the delivery of selectable prerecorded messages to callers on demand in services such as dial-a-prayer and dial-a-joke, which were available long before the invention of cellular telephones or the Internet.

---

[3] Affinity argues that the district court erred in disregarding the statement of its expert that streaming content to a portable device was novel as of the priority date of the '085 patent. But the eligibility finding does not turn on the lack of novelty of the claim; it turns on the fact that the claim is drawn to any embodiment of an abstract idea. The district court therefore properly disregarded the expert's statement.

While Affinity criticizes the magistrate's making factual findings on a motion for judgment on the pleadings, the practice of taking note of fundamental economic concepts and technological developments in this context is well supported by our precedents. *See, e.g.*, *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362-63 (Fed. Cir. 2015) (affirming district court's finding on a motion to dismiss that "offer-based price optimization" is a fundamental economic concept and that the claimed computer-based implementation of that idea is routine and conventional); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (affirming district court's finding on a motion to dismiss that the claims were directed to the well-known abstract idea of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory").

Affinity also objects to the magistrate judge's conclusion that the claims merely set forth "routine and generic processing and storing capabilities of computers generally." Yet the claim terms to which the magistrate judge referred, such as a "network based media management system" and a "graphical user interface," are simply generic descriptions of well-known computer components. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 611 (physical components such as a telephone and a server "merely provide a generic environment in which to carry out the abstract idea"); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (claims reciting an "interface," "network," and "database" are directed to an abstract idea). Affinity makes no claim that it invented any of those components or their basic functions, nor does it suggest that those components, at that level of generality, were unknown in the art as of the priority date of the '085 patent.

In an effort to show that claim 14 is not directed to an abstract idea, Affinity focuses in particular on the recita-

tion of a "customized user interface" in that claim. For support, Affinity cites passages in the specification that describe embodiments in which a user may elect to have a customized interface such as a radio dial, a playlist, or targeted advertising based on demographic information provided by the user. *See* '085 patent, col. 10, ll. 10-26; col. 11, ll. 5-35. This court, however, has held that "customizing information based on . . . information known about the user" is an abstract idea. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015). The court in the *Intellectual Ventures I* case explained that tailoring of content based on information about the user—such as where the user lives or what time of day the user views the content—is an abstract idea that is as old as providing different newspaper inserts for different neighborhoods. *Id.*

The term "customized user interface," as used in the '085 patent, is not limited to any particular form of customization, but covers the general idea of customizing a user interface. Like the basic concept of tailoring content to a user, as in *Intellectual Ventures I*, the basic concept of customizing a user interface is an abstract idea.

B

Turning to the second step of the *Mayo/Alice* inquiry, we conclude that there is nothing in the claims or the specification of the '085 patent that constitutes a concrete implementation of the abstract idea in the form of an "inventive concept." *Alice*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1294.

As noted, representative claim 14 is written in largely functional terms, claiming "a collection of instructions" that perform the functions of displaying a selection of available content on a graphical user interface and allowing the user to request streaming of that content. The claims thus do not go beyond "stating [the relevant] functions in general terms, without limiting them to

technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Elec. Power Grp.*, slip op. at 2.

Features such as network streaming and a customized user interface do not convert the abstract idea of delivering media content to a handheld electronic device into a concrete solution to a problem. The features set forth in the claims are described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent.

In particular, claim 14 requires a "network based delivery resource," but that does not make the claim a patent-eligible implementation of an abstract idea. The specification makes clear that any technology capable of wireless communication of audio information to the device would be covered. *See* '085 patent, col. 4, ll. 41-45 ("The present invention advantageously allows for several different embodiments of wirelessly communicating selected audio information to [an] electronic device . . . and is not limited to any specific configuration described below.").

The only putatively narrowing limitation in that result-focused claim is the limitation requiring that the "network based media managing system" have "a customized user interface page for the given user." But neither the claim nor the specification reveals any concrete way of employing a customized user interface. The specification simply states that a user interface can be customized "in a plurality of ways" by allowing users to select and receive "on-demand customized audio information." *Id.*, col. 16, ll. 21-22, 25-26. That disclosure and the accompanying "customized user interface" limitation in the claim do not constitute a concrete application of the abstract idea of delivering content to a wireless device and thus do not

embody an "inventive concept," as that term has been used in the *Mayo/Alice* line of cases.

In sum, the patent in this case is not directed to the solution of a "technological problem," *Alice*, 134 S. Ct. at 2358, nor is it directed to an improvement in computer or network functionality, *see In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 612. It claims the general concept of streaming user-selected content to a portable device. The addition of basic user customization features to the interface does not alter the abstract nature of the claims and does not add an inventive component that renders the claims patentable. We therefore uphold the district court's judgment that the claims of the '085 patent are not eligible for patenting.

**AFFIRMED**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

*Questions and Answers*

**Petitions for Panel Rehearing (Fed. Cir. R. 40)
and
Petitions for Hearing or Rehearing En Banc (Fed. Cir. R. 35)**

---

*Q. When is a petition for panel rehearing appropriate?*

A. Petitions for panel rehearing are rarely considered meritorious. Consequently, it is easiest to first answer when a petition for panel rehearing is not appropriate. A petition for panel rehearing should not be used to reargue issues already briefed and orally argued. If a party failed to persuade the court on an issue in the first instance, they do not get a second chance. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36, as a disposition of this nature is used only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance.

Thus, as a usual prerequisite, the court must have filed an opinion in support of its judgment for a petition for panel rehearing to be appropriate. Counsel seeking panel rehearing must be able to identify in the court's opinion a material error of fact or law, the correction of which would require a different judgment on appeal.

*Q. When is a petition for rehearing en banc appropriate?*

A. En banc decisions are extraordinary occurrences. To properly answer the question, one must first understand the responsibility of a three-judge merits panel of the court. The panel is charged with deciding individual appeals according to the law of the circuit as established in the court's precedential opinions. While each merits panel is empowered to enter precedential opinions, the ultimate duty of the court en banc is to set forth the law of the Federal Circuit, which merits panels are obliged to follow.

Thus, as a usual prerequisite, a merits panel of the court must have entered a precedential opinion in support of its judgment for a petition for rehearing en banc to be appropriate. In addition, the party seeking rehearing en banc must show that either the merits panel has failed to follow decisions of the Supreme Court of the United States or Federal Circuit precedential opinions, or that the merits panel has followed circuit precedent, which the party seeks to have overruled by the court en banc.

*Q. How frequently are petitions for panel rehearing granted by merits panels or petitions for rehearing en banc granted by the court?*

A. The data regarding petitions for panel rehearing since 1982 shows that merits panels granted some relief in only three percent of the petitions filed. The relief granted usually involved only minor corrections of factual misstatements, rarely resulting in a change of outcome in the decision.

En banc petitions have been granted less frequently. Historically, the court has initiated en banc review in a few of the appeals decided en banc since 1982.

*Q. Is it necessary to have filed either of these petitions before filing a petition for certiorari in the U.S. Supreme Court?*

A. No. All that is needed is a final judgment of the Court of Appeals.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## INFORMATION SHEET

## FILING A PETITION FOR A WRIT OF CERTIORARI

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. You must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. (See Rule 10 of the Rules of the Supreme Court of the United States, hereinafter called Rules.)

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. [The time does not run from the issuance of the mandate, which has no effect on the right to petition.] (See Rule 13 of the Rules.)

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. (See Rules 38 and 39.)

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner representing himself or herself.

**Format of a Petition.** The Rules are very specific about the order of the required information and should be consulted before you start drafting your petition. (See Rule 14.) Rules 33 and 34 should be consulted regarding type size and font, paper size, paper weight, margins, page limits, cover, etc.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of the petition for writ of certiorari and of the motion for leave to proceed in forma pauperis. (See Rule 12.)

**Where to File.** You must file your documents at the Supreme Court.

**Clerk**
**Supreme Court of the United States**
1 First Street, NE
Washington, DC 20543
(202) 479-3000

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

**Access to the Rules.** The current rules can be found in Title 28 of the United States Code Annotated and other legal publications available in many public libraries.

Revised December 16, 1999